2023 IL App (1st) 210881

No. 1-21-0881

Second Division
March 28, 2023

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

|  |  |  |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Cook County. |
|  | ) |  |
| Plaintiff-Appellee, | ) |  |
|  | ) |  |
| v. | ) | No. 98 CR 2273002 |
|  | ) |  |
| SHAUN PROFIT, | ) ) | Honorable Pamela M. Leeming, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE COBBS delivered the judgment of the court, with opinion.
Presiding Justice Fitzgerald Smith and Justice Howse concurred in the judgment and opinion.

**OPINION**

¶ 1    Following a 1999 bench trial, defendant-appellant Shaun Profit was found guilty of attempted murder and armed robbery and sentenced to 36 years in prison. We affirmed his convictions and sentence on direct appeal. *People v. Profit*, No. 1-00-0353 (2001) (summary order under Illinois Supreme Court Rule 23(c)). Defendant now appeals from the circuit court's denial of his motion for leave to file a successive petition for postconviction relief pursuant to the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2020)). On appeal, defendant

argues that the 2019 enactment of section 5-4.5-115(b) of the Code of Corrections (730 ILCS 5/5-4.5-115(b) (West 2020)) violates his constitutional right to equal protection under the fourteenth amendment of the United States Constitution (U.S. Const., amend. XIV) and article I, section 2, of the Illinois Constitution (Ill. Const. 1970, art. I, § 2) because it only applies prospectively, not retroactively. For the reasons that follow, we affirm.

¶ 2                                  I. BACKGROUND

¶ 3      This case stems from a shooting that occurred on July 24, 1998, on the 500 block of Des Plaines Avenue in Forest Park, Illinois, during which the victim, Leon Forrester, sustained multiple nonfatal gunshot injuries. Defendant was charged by indictment, along with codefendant Simione Dunn and Katrina Dent, with attempted first degree murder, aggravated battery with a firearm, armed violence, home invasion, armed robbery, aggravated discharge of a firearm, and aggravated battery. The case proceeded to a simultaneous but severed bench trial with his codefendant, Dunn. We set forth the underlying facts of the case to the extent necessary here.

¶ 4      Pursuant to a plea bargain, Dent testified that on July 24, 1998, she, defendant, and codefendant Dunn planned to rob Forrester at his apartment. While at the apartment, Dent saw codefendant Dunn shoot Forrester in the back of the head. Dent then ran outside, where she saw defendant enter the apartment wearing latex gloves and carrying a gym bag. Later, codefendant Dunn told Dent that "Shaun took care of [her] boy."

¶ 5      Forrester testified that he did not see defendant, but he heard another person enter the apartment after he had been shot the first time. He heard codefendant Dunn say, "Shaun, watch them." The two men (defendant and codefendant Dunn) searched the apartment and asked Forrester where the money was located. When he responded that he did not have any money, the individual named Shaun shot him in the back of the neck, and codefendant Dunn stated, "Come

on, Shaun, let's go." Forrester testified that some money and a cell phone were taken from his apartment.

¶ 6    The court found defendant guilty on all counts charged. The court merged the convictions and sentenced defendant to consecutive terms of 18 years for attempted first degree murder and armed robbery, for a total of 36 years' imprisonment. In sentencing defendant, the court confirmed that defendant was 18 years old at the time the offenses were committed and 20 years old at the time of sentencing.

¶ 7    On direct appeal, defendant challenged the sufficiency of the evidence and claimed that the statute that mandated consecutive sentences was unconstitutional. This court affirmed his convictions and sentence. *Profit*, No. 1-00-0353, slip order at *3.

¶ 8    On July 24, 2002, defendant filed an initial *pro se* postconviction petition, arguing that his consecutive sentences were unconstitutional and the State's use of Dent's allegedly perjured testimony violated his due process rights. The trial court summarily dismissed the petition. After defendant filed his appeal, appellate counsel filed a motion to withdraw as appointed counsel pursuant to *Pennsylvania v. Finley*, 481 U.S. 551 (1987). *People v. Profit*, No. 1-02-3154 (2001) (unpublished order under Illinois Supreme Court Rule 23). This court granted counsel's motion and affirmed. *Id.*

¶ 9    Defendant filed two successive postconviction petitions prior to the one currently before us, one in 2003 and another in 2015. This court affirmed the ultimate dismissal of both petitions. *People v. Profit*, 2012 IL App (1st) 101307; *People v. Profit*, 2019 IL App (1st) 162054-U. Defendant also filed a motion for leave to file a complaint for *mandamus*, requesting that his sentence be recalculated because the truth in sentencing law should not have been applied to him. The circuit court denied that motion.

¶ 10    On October 21, 2020, defendant filed the motion for leave to file a successive postconviction petition that is the subject of this appeal. His leave-to-file motion is accompanied by the proposed successive petition. Relevant to this appeal, defendant argues, *inter alia*, that he is entitled to a new sentencing hearing because the legislature recently changed the law to allow a person under 21 years old at the time of the offense to be eligible for parole review after serving 10 years of his or her sentence.[1] He argues that he should be resentenced under the new law.

¶ 11    On December 18, 2020, the circuit court denied defendant leave to file his petition, finding that it was "frivolous and without merit" and that he "failed to raise or meet the cause and prejudice test in this case."

¶ 12    On July 13, 2021, defendant filed a motion for leave to file a late notice of appeal, and on August 16, 2021, this court allowed the motion.

¶ 13                                    II. ANALYSIS

¶ 14    On appeal, defendant argues that section 5-4.5-115 (730 ILCS 5/5-4.5-115(b) (West 2020)) denies prisoners sentenced before June 1, 2019, equal protection under the fourteenth amendment of the United States Constitution (U.S. Const., amend. XIV) and article I, section 2, of the Illinois Constitution (Ill. Const. 1970, art. I, § 2) and, therefore, it must be applied retroactively. Defendant contends that he is entitled to a new sentencing hearing under the new statute, which will cure the equal protection violation that prevents him from obtaining parole review. He urges this court to reverse the circuit court's denial of his leave-to-file motion and remand for further proceedings under the Act.

¶ 15                                    A. The Act

---

[1]We note that defendant incorrectly cites section 5-4.5-105, rather than section 5-4.5-115, which is correctly cited on appeal.

¶ 16     The Act provides a method for a defendant to collaterally attack a conviction by asserting that it resulted from a "substantial denial" of his constitutional rights. 725 ILCS 5/122-1 (West 2018); *People v. Hodges*, 234 Ill. 2d 1, 9 (2009). The Act contemplates the filing of only one petition without leave of court. *People v. Lusby*, 2020 IL 124046, ¶ 27. Because successive postconviction petitions undermine the finality of criminal proceedings, the hurdles for these petitions "are lowered in very limited circumstances." *People v. Tenner*, 206 Ill. 2d 381, 392 (2002).

¶ 17     To satisfy section 122-1 of the Act, the petitioner must demonstrate both cause for his failure to raise the claim in the initial petition and prejudice from that failure. *People v. Smith*, 2014 IL 115946, ¶ 33; see also *People v. Guerrero*, 2012 IL 112020, ¶ 15 (stating that both prongs must be satisfied for leave of court to be granted). The cause-and-prejudice test is a more difficult standard to satisfy than that required at the first stage for an initial postconviction petition. *Smith*, 2014 IL 115946, ¶ 35. To show cause, the petitioner must identify an objective factor that impeded his ability to raise a specific claim during his initial postconviction proceedings. 725 ILCS 5/122-1(f) (West 2018). To show prejudice, the petitioner must demonstrate that the claim not raised during his initial postconviction proceedings so infected the resulting conviction or sentence that it violated due process. *Id.* It is the petitioner's burden to establish a *prima facie* showing of cause and prejudice before any further proceedings on his claims can occur. *People v. Bailey*, 2017 IL 121450, ¶ 24; *Smith*, 2014 IL 115946, ¶ 30.

¶ 18     Finally, "leave of court to file a successive postconviction petition should be denied when it is clear, from a review of the successive petition and the documentation submitted by the petitioner, that the claims alleged by the petitioner fail as a matter of law or where the successive petition with supporting documentation is insufficient to justify further proceedings." *Smith*, 2014

IL 115946, ¶ 35. Whether the denial of defendant's motion for leave to file a successive postconviction petition was proper is an issue that we review *de novo*. *People v. Edgeston*, 396 Ill. App. 3d 514, 518 (2009).

¶ 19    Defendant contends that he has shown the requisite cause and prejudice for leave to file a successive petition. For cause, he points out that section 5-4.5-115(b) did not exist until years after defendant's direct appeal and initial postconviction petition proceedings. As to prejudice, defendant argues that he was "not afforded the benefit of future parole review at the time of his sentencing," as section 5-4.5-115(b) limits parole review to prisoners sentenced on or after June 1, 2019. In particular, he asserts that, if the provision is not applied retroactively to defendant, he would be denied the equal protection of the laws.

¶ 20    For the reasons set forth below, we resolve this appeal on defendant's failure to establish the requisite prejudice, and therefore, we need not address the cause prong of the cause-and-prejudice test. See *People v. Pitsonbarger*, 205 Ill. 2d 444, 464 (2002) (stating that both elements of the cause-and-prejudice test "must be met in order for the petitioner to prevail). We first set forth the statutory provision at issue and its background relevant to the issues at hand.

¶ 21                                B. Section 5-4.5-115

¶ 22    In 2017, the General Assembly introduced a bill that would become the parole statute at issue here. The legislation was signed into law by the Governor on April 1, 2019. The new parole review statute provides in pertinent part:

> "A person under 21 years of age at the time of the commission of an offense or offenses, other than first degree murder and who is sentenced on or after June 1, 2019 (the effective date of Public Act 100-1182) shall be eligible for parole review by the Prisoner Review

Board after serving 10 years or more of his or her sentence[.]" 730 ILCS 5/5-4.5-115(b) (West 2020).

¶ 23    The enactment of this statute is a reflection of the recent Illinois jurisprudence deriving from *Miller v. Alabama*, 567 U.S. 460 (2012), recognizing the potential for rehabilitation of juveniles and the evolving neuroscience showing that young adults (18 to 21 years old) may have similar brain development to those typically considered juveniles. See *People v. Buffer*, 2019 IL 122327; *People v. Harris*, 2018 IL 121932; *People v. Holman*, 2017 IL 120655; *People v. Reyes*, 2016 IL 119271; *People v. Thompson*, 2015 IL 118151. The statute makes parole review available to those convicted of offenses other than murder who were over 18 years old but under 21 years old at the time of the crime where it previously was not available. Further, subsection (j) provides that the parole review board "shall consider the diminished culpability of youthful offenders, the hallmark features of youth, and any subsequent growth and maturity of the youthful offender during incarceration." 730 ILCS 5/5-4.5-115(j) (West 2020).

¶ 24                                    C. Prejudice

¶ 25    Defendant argues that, despite the legislature's proscription against applying the new law to anyone sentenced prior to June 1, 2019, the statute should apply retroactively because "its intended prospective-only effect is constitutionally prohibited." Specifically, he asserts that the statute categorically discriminates between prisoners sentenced before and after June 1, 2019, and because the distinction is arbitrary, irrational, and unjustifiable, the statute fails rational basis review.

¶ 26    In response, the State argues that "[d]efendant's attempts to justify retroactive application are defeated by the legislature's clearly demonstrated intent of prospective application by providing a specific date of effect" and defendant has failed to provide a sufficient constitutional

basis for rejecting the temporal reach of the statute. As such, the State contends, the statute simply does not apply to defendant, and he cannot demonstrate prejudice.

¶ 27    The constitutionality of a statute is reviewed *de novo*. *People v. Jones*, 223 Ill. 2d 569, 596 (2006). "Statutes are presumed constitutional, and we must construe the statute so as to uphold its constitutionality and validity." *People v. Carter*, 377 Ill. App. 3d 91, 99 (2007). The party challenging a statute has the burden of clearly showing a constitutional violation. *Id.*

¶ 28    Because defendant contends that the statute should be applied retroactively, we begin with a retroactivity analysis.

¶ 29    Illinois courts apply a retroactivity analysis that couples the procedure set forth in the United States Supreme Court's decision in *Landgraf v. USI Film Products*, 511 U.S. 244 (1994), with section 4 of our legislature's Statute on Statutes (5 ILCS 70/4 (West 2020)), the general savings clause that instructs on the temporal reach of statutory amendments. *Caveney v. Bower*, 207 Ill. 2d 82, 92 (2003); see also *People v. Hunter*, 2017 IL 121306, ¶ 36 ("[O]ur retroactivity jurisprudence, though flowing from *Landgraf*, was tempered by our construction of section 4 of the Statute on Statutes ***.").

¶ 30    Under *Landgraf*, we first determine whether the legislature has "expressly prescribed" the statute's temporal reach. 511 U.S. at 280. If the legislature has included such language, the legislature's intent will be given effect. *People ex rel. Alvarez v. Howard*, 2016 IL 120729, ¶ 19. If the temporal reach of the statute is not clearly indicated in the text of the statute, then we conduct the appropriate analysis under section 4. *Hunter*, 2017 IL 121306, ¶ 22.

¶ 31    Here, section 5-4.5-115(b) explicitly states that the provision only applies to those sentenced on or after June 1, 2019. Because the provision at issue clearly indicates that its temporal reach is prospective only, we give effect to the legislature's intent and need not proceed further in

our retroactivity analysis. See *Doe v. Diocese of Dallas*, 234 Ill. 2d 393, 407 (2009) (holding that the statutory provision's language that the amendment applies to actions pending on the effective date or were commenced thereafter presented a situation "in which the legislature has clearly indicated when the relevant statute applies").

¶ 32 Despite the clearly defined temporal reach of the statute, we nevertheless consider defendant's argument that the stated temporal reach is a constitutional violation of the equal protection of the laws. See *Howard*, 2016 IL 120729, ¶ 19 (stating that the clear expression of legislative intent "must be given effect, absent a constitutional prohibition").

¶ 33 Defendant concedes that a suspect classification is not involved and, therefore, rational basis review is used in addressing defendant's equal protection argument. See *People v. Botruff*, 212 Ill. 2d 166, 176-77 (2004) (where a case does not involve a suspect classification, rational basis test is to be used). "The rational basis test requires a rational relationship to a legitimate state interest ***." *Carter*, 377 Ill. App. 3d at 99. In regards to an equal protection analysis, the government is required to treat similarly situated individuals in a similar fashion, but "it does not prevent the government from drawing distinctions between different categories of people in enacting legislation" where there is a rational basis for distinguishing the two categories. *Id.* at 105 (citing *People v. R.L.*, 158 Ill. 2d 432, 443 (1994)).

¶ 34 Our supreme court has addressed this issue, albeit considering a different statute, in *People v. Richardson*, 2015 IL 118255. There, the statute at issue was an amendment to the Juvenile Court Act. The amendment extended applicability of the Act to minors under the age of 18, where previously the Act only applied to those who were under 17 years of age, but expressly stated that the amendment only applied to violations committed after the effective date (January 1, 2014). *Id.* ¶ 3 (citing 720 ILCS 5/11-1.20(a)(2) (West 2012)). The defendant, who was indicted in 2013 when

he was 17 years old, like defendant here, challenged the constitutionality of the amendment's prospective-only application on equal protection grounds. *Id.* ¶ 5.

¶ 35 In concluding that the statute's effective date created neither a federal nor state constitutional infirmity, the court expressly stated that "neither the fourteenth amendment nor the Illinois Constitution prevents statutes and statutory changes from having a beginning, nor does either prohibit reasonable distinctions between rights as of an earlier time and rights as they may be determined at a later time." *Id.* ¶ 10. The supreme court further explained that the temporal limitation on the statutory amendment's application ensured that "cases already in progress would not have to restart," "defendants could not manipulate or delay their proceedings to take advantage of the amendment's effective date," and judicial resources would be preserved. *Id.* In concluding that the effective date did not render the amendment unconstitutional, the court acknowledged that "statutory amendments which apply to some but not to others may appear unfair to a certain extent," but "[n]evertheless, statutory changes must have a beginning." *Id.* Finally, the court cited its much earlier decision in *People v. Grant*, 71 Ill. 2d 551 (1978), which also rejected an equal protection challenge premised on a sentencing statutory amendment's effective date, for support of its conclusion. *Richardson*, 2015 IL 118255, ¶ 11; see also *Braeburn Securities Corp. v. Smith*, 15 Ill. 2d 55, 62 (1958) ("Certainly the legislature has a right to make a distinction in its enactments between existing rights and conditions and rights and conditions that may exist in the future."); *Coney v. J.L.G. Industries, Inc.*, 97 Ill. 2d 104, 125 (1983) (holding that the prospective-only application of new rules or doctrines from precedential decisions does not violate equal protection rights under the fourteenth amendment).

¶ 36 Effective dates for the application of a statute are remarkably common. In every instance where a new statute applies only prospectively, there will be two similarly situated classes that are

treated differently based on the temporal reach of the statute or amendment. In that sense, the challenge before us is not unique nor distinguishable from the circumstances in *Richardson*. As the appellate court, we have no authority to depart from our supreme court's precedent on an issue, and defendant provides no precedential authority contradicting either *Richardson* or *Grant*. See *People v. Artis*, 232 Ill. 2d 156, 164 (2009) ("The appellate court lacks authority to overrule decisions of [the supreme] court, which are binding on all lower courts.").

¶ 37 Moreover, the clear purposes of establishing effective dates for legislative changes set forth in *Richardson* are equally applicable here. We, like the *Richardson* court, recognize the resulting disparities in being sentenced prior to a change in the law that could potentially reduce such sentence; however, there must be some semblance of finality to convictions, and judicial resources are limited. The legislature intended to provide youthful offenders with cases then pending in the trial court, as well as future youthful offenders, the possibility of parole review to assess their rehabilitation. As such, we find the statute bears a rational relationship to a legitimate state interest and must be upheld.

¶ 38 Finally, we reject defendant's reliance on this court's discussion of this statute in *People v. Metlock*, 2021 IL App (1st) 170946-U.[2] There, the defendant appealed from the denial of his motion for leave to file a successive postconviction petition, arguing that his 50-year sentence violated the eighth amendment of the United States Constitution and the proportionate penalties clause of the Illinois Constitution. *Id.* ¶ 49. In addressing the defendant's proportionate penalties clause challenge, the court discussed the growing body of research showing that the human brain may not reach full development until a person's twenties and noted that legislation had also been

---

[2]We note that Justice Lavin filed a dissent in *Metlock*.

passed recently to reflect this research. *Id.* ¶¶ 65-71. The court specifically singled out the statutory provision at issue here, section 5-4.5-115(b), and pointed out that the legislature's decision to not make the provision retroactive "caused a wide disparity" between those sentenced before and after June 1, 2019. *Id.* ¶¶ 71-72. After observing legislators' comments during debate, the court stated that including an effective date was a last-minute compromise to pass the legislation. *Id.* ¶ 76. Further, the court stated that it could see "no rational or justifiable reason to make a parole hearing available" for those sentenced after June 1, 2019, but not sentenced prior. *Id.* ¶ 75.

¶ 39    Defendant argues this court should find the reasoning in *Metlock* persuasive and conclude that there is no "rational or justifiable reason" to deny parole review to defendant and similarly situated defendants. We disagree. First, the court's comments, which we consider *dicta*, were not necessary for resolution of the defendant's appeal, which did not challenge the constitutionality of that statute. Second, finding that the statute violates equal protection because it applies only prospectively would be in direct opposition to our supreme court precedent. See *Richardson*, 2015 IL 118255; *Grant*, 71 Ill. 2d 551. Lastly, we point out that one legislator commented that, because the legislation was prospective only, it would not "disturb any victims *** whose offenders have already been imprisoned." (Internal quotation marks omitted.) *Metlock*, 2021 IL App (1st) 170946-U, ¶ 72. The *Metlock* court admitted that the "victims of these horrible crimes" are also a concern to the courts, as well as the legislature, but insinuated that the parole review board could consider that concern during its review of each case. *Id.* ¶ 76. We do not disagree that the parole review board could consider the effect on the victims in deciding parole, but nonetheless, the legislator's

comment in fact supports our conclusion that there was a legitimate state interest in making the legislation prospective only.[3]

¶ 40    We reiterate that we, like the *Metlock* court, are mindful of the disparities caused by the legislature's decision to not make the new law retroactive. Nonetheless, the retroactivity caselaw is clear that we must adhere to *Landgraf* and section four of the Statute on Statutes in determining the temporal reach of the new law. As such, it falls to the legislature to redress any perceived disparities, if it so chooses.

¶ 41    Accordingly, we conclude that defendant cannot establish prejudice because the prospective-only application of the parole review statute does not violate defendant's right to equal protection of the laws. As such, the circuit court's denial of defendant's leave-to-file motion was proper.

¶ 42                                III. CONCLUSION

¶ 43    For the reasons stated, we affirm the judgment of the circuit court.

¶ 44    Affirmed.

---

[3]The same *dicta* criticizing the prospective application of this statute in *Metlock* appears in a later case, *People v. Durant*, 2022 IL App (1st) 211190-U, ¶¶ 12-15, which defendant also cites for support. For the reasons that we do not apply the *dicta* in *Metlock*, we also do not apply the *dicta* in *Durant*.

---

***People v. Profit*, 2023 IL App (1st) 210881**

---

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 98-CR-2273002; the Hon. Pamela M. Leeming, Judge, presiding. |

---

| | |
|---|---|
| **Attorneys for Appellant:** | Sharone R. Mitchell Jr., Public Defender, of Chicago (Ross K. Holberg, Assistant Public Defender, of counsel), for appellant. |

---

| | |
|---|---|
| **Attorneys for Appellee:** | Kimberly M. Foxx, State's Attorney, of Chicago (Enrique Abraham, Brian K. Hodes, and Taylor K. Santell, Assistant State's Attorneys, of counsel), for the People. |

---