2024 IL App (1st) 211190-B
No. 1-21-1190

FIRST DIVISION
March 25, 2024

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 01 CR 22873 |
| | ) | |
| KENNETH DURANT, | ) | Honorable |
| | ) | Vincent M. Gaughan, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE PUCINSKI delivered the judgment of the court, with opinion.
Justice Hyman concurred with the judgment and opinion.
Justice Hyman also specially concurred, with opinion.
Justice Lavin dissented, with opinion.

**OPINION**

¶ 1    Defendant Kenneth Durant appeals from the circuit court's denial of leave to file a *pro se* successive petition for relief pursuant to the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2020)). In a September 2022 unpublished order, we affirmed after finding that defendant could not benefit from a 2021 amendment to the habitual criminal provision (730 ILCS 5/5-4.5-95(a) (West 2022)) that specifies that the first predicate offense be committed after the defendant is 21 years of age. *People v. Durant*, 2022 IL App (1st) 211190-U. Our supreme court

subsequently issued a supervisory order directing us to consider the effect of its opinion in *People v. Stewart*, 2022 IL 126116, on the issue of whether defendant's life sentence is unconstitutional and determine if a different result is warranted.

¶ 2    In light of *Stewart*, we now reverse. We find that *Stewart*'s analysis of Public Act 101-652 (eff. July 1, 2021)'s amendment to the Class X sentencing provision in subsection (b)(4) of section 4-4.5-95 of the Unified Code of Corrections (Code) (730 ILCS 5/5-4.5-95(b)(4) (West 2022)) must apply to the identically worded amendment to the habitual criminal provision in subsection (a) of the same statute, which requires that the "first offense was committed when the person was 21 years of age or older." See *id.* § 5-4.5-95(a). *Stewart* found the amendment to the Class X sentencing provision was intended by the legislature to "clarify" existing law as to whether crimes committed before age 21 could be predicate offenses. *Stewart*, 2022 IL 126116, ¶ 22. *Stewart* thus held a prior conviction for an offense committed before age 21 is not a qualifying offense, even for a defendant sentenced before the 2021 amendment. See *id.* ¶¶ 22-23.

¶ 3    We find that *Stewart*'s determination as to the legislative intent behind the Class X sentencing amendment in subsection (b) applies equally to the amendment to the habitual criminal provision in subsection (a), especially since the legislature made these amendments *simultaneously* in the same public act, adding identical language. Pub. Act 101-652, § 10-281 (eff. July 1, 2021). Consistent with *Stewart*, we conclude the simultaneous amendment to the Class X and habitual criminal provisions reflected the legislature's intent to clarify and restore the original meaning of the provisions—that only convictions for offenses committed after age 21 should count towards *either* sentencing a defendant as a Class X offender or adjudging him as a habitual criminal. Moreover, *Stewart* applies retroactively on collateral review, since it "narrow[ed] the scope of a

criminal statute by interpreting its terms." See *People v. Reed*, 2014 IL App (1st) 122610, ¶ 86. Accordingly, we reverse and remand for resentencing.

¶ 4                                          BACKGROUND

¶ 5      Following a jury trial in 2005, defendant was found guilty of aggravated vehicular hijacking and two counts of armed robbery. He was sentenced to life imprisonment as a habitual criminal, based on convictions for prior offenses including a robbery when he was 16 years old. At the time of his sentencing, the habitual criminal provision in effect (720 ILCS 5/33B-1 (West 2000)), did not specify whether a defendant must have reached any particular age when he committed any of the predicate offenses.[1] We affirmed on direct appeal. See *People v. Durant*, No. 1-05-2449 (2008) (unpublished order under Illinois Supreme Court Rule 23).

¶ 6      Defendant thereafter filed a *pro se* postconviction petition, which he amended. The circuit court summarily dismissed the petition as frivolous and patently without merit. On appeal, we reversed and remanded for further proceedings under the Act. See *People v. Durant*, No. 1-10-0371 (2011) (unpublished summary order under Illinois Supreme Court Rule 23(c)). On remand, appointed counsel supplemented the petition and the circuit court ultimately granted the State's motion to dismiss. We affirmed, finding, in pertinent part, that defendant failed to make a substantial showing that his counsel on direct appeal was ineffective for not challenging his life sentence as unconstitutional on the grounds that he was a juvenile at the time of the first qualifying offense. See *People v. Durant*, 2017 IL App (1st) 143031-U.

---

[1]Effective July 1, 2009, that provision was repealed by Public Act 95-1052 and recodified without modification as section 5-4.5-95(a) of the Code. Pub. Act 95-1052, § 5 (eff. July 1, 2009); 730 ILCS 5/5-4.5-95(a) (West 2022).

¶ 7    Defendant then filed two unsuccessful *pro se* petitions for relief from judgment. See *People v. Durant*, No. 1-19-0214 (2020) (unpublished summary order under Illinois Supreme Court Rule 23(c)); *People v. Durant*, No. 1-20-0440 (2021) (unpublished summary order under Illinois Supreme Court Rule 23(c)).

¶ 8    On June 1, 2021, defendant filed a *pro se* motion for leave to file a successive postconviction petition. In that petition, he alleged his life sentence was "unconstitutional as applied to him," since the legislature amended the habitual criminal provision to require that the first qualifying offense occur when a defendant is 21 years or older. Specifically, in Public Act 101-652 (eff. July 1, 2021), the legislature amended section 5-4.5-95(a) of the Code to specify that a person cannot be adjudged a habitual criminal unless "[t]he first offense was committed when the person was 21 years of age or older." 730 ILCS 5/5-4.5-95(a)(4)(E) (West 2022). Because one of defendant's qualifying offenses occurred when he was a juvenile, defendant argued that his sentence violated the proportionate penalties clause of the Illinois Constitution. On August 18, 2021, the circuit court denied defendant leave to file the successive petition, concluding that the 2021 amendment to the habitual criminal provision did not apply retroactively and thus could not provide him relief.

¶ 9    Defendant appealed. His appointed appellate counsel, the Office of the State Appellate Defender (OSAD), initially determined that an appeal was without arguable merit and moved for leave to withdraw pursuant to *Pennsylvania v. Finley*, 481 U.S. 551 (1987). In response to that motion, defendant asserted that under *Miller v. Alabama*, 567 U.S. 460 (2012) and its progeny, as well as the 2021 amendment to the habitual criminal provision, he was entitled to resentencing because he was a juvenile when he committed one of the felonies underlying his sentence.

¶ 10     In a September 2022 order, we affirmed the denial of defendant's motion for leave to file a successive petition but emphasized that it was "troubling" that the first predicate offense was committed when he was 16 years old. *Durant*, 2022 IL App (1st) 211190-U, ¶ 9. We recognized that the legislature had amended the habitual criminal provision to require that a defendant's first qualifying predicate offense be committed after he or she is 21 years old, but the legislature did not specify that the amendment was retroactive. *Id.* ¶ 10 (citing 730 ILCS 5/5-4.5-95 (West 2022)). As a result, we found there existed "two classes of habitual criminals: those who committed their first qualifying offense as juveniles before the amendment and those who committed their first qualifying offense after the amendment." *Id.* ¶ 11. We remarked that due to the "non-retroactive effect" of the amendment, "a class of juvenile offenders is being extraordinarily punished not for the nature of their crime but when it was committed." *Id.* ¶ 14. We found this "both unjust and unjustifiable." *Id.* ¶ 15.

¶ 11     Nevertheless, we recognized that we were "obligated to follow the law as it is written," absent further action by the legislature or our supreme court. *Id.* ¶ 16. Accordingly, we granted appellate counsel's motion to withdraw. We subsequently denied defendant's petition for rehearing in our court.

¶ 12                    The Supreme Court's *Stewart* Decision

¶ 13     On October 20, 2022, our supreme court issued its opinion in *Stewart*, 2022 IL 126116, ¶ 1, which held that a defendant's Class X sentence under section 5-4.5-95(b) of the Code (730 ILCS 5/5-4.5-95(b) (West 2016)), should be vacated because one of the predicate felony offenses was committed when he was 17 years old. Notably, the *Stewart* defendant was sentenced before Public Act 101-652 (eff. July 1, 2021) amended the Class X sentencing provision to specify that

the first predicate felony must have been committed "when the person was 21 years of age or older." 730 ILCS 5/5-4.5-95(b)(4) (West 2022). However, our supreme court determined that the Class X sentencing amendment was "intended to resolve [a] conflict in the appellate court and clarify the meaning of the original statute" such that it applied to the defendant notwithstanding that he was sentenced before July 2021. *Stewart*, 2022 IL 126116, ¶ 22.

¶ 14   When the *Stewart* defendant was sentenced in 2016, the Class X sentencing provision stated:

> "When a defendant, over the age of 21 years, is convicted of a Class 1 or Class 2 felony, after having twice been convicted in any state or federal court of an offense that contains the same elements as an offense now (the date the Class 1 or Class 2 felony was committed) classified in Illinois as a Class 2 or greater Class felony and those charges are separately brought and tried and arise out of different series of acts, that defendant shall be sentenced as a Class X offender. This subsection does not apply unless:
>
> (1) the first felony was committed after February 1, 1978 (the effective date of Public Act 80-1099);
>
> (2) the second felony was committed after conviction on the first; and
>
> (3) the third felony was committed after conviction on the second." 730 ILCS 5/5-4.5-95(b) (West 2016).

¶ 15    One of the predicate convictions upon which the *Stewart* defendant was found eligible for Class X sentencing was a residential burglary conviction in 2013, when he was 17 years old. *Stewart*, 2022 IL 126116, ¶ 7. In 2014, the Juvenile Court Act of 1987 was amended to raise the age for exclusive juvenile court jurisdiction to 17 years. *Id.* (citing Pub. Act 98-61 (eff. Jan. 1, 2014) (amending 705 ILCS 405/5-120, 5-130)). The *Stewart* defendant argued that the 2013 burglary conviction was not a qualifying offense for Class X sentencing, because "if he had committed the residential burglary on August 13, 2016 (the date that the current offense was committed), it would have resulted in a juvenile adjudication, not a felony conviction." *Id.* The State contended that under section 5-4.5-95(b) of the Code, "whether defendant was a juvenile at the time of the prior offense is irrelevant" and that a prior offense may serve as a predicate if its elements are the "same as those of an offense that constitutes a Class 2 or greater Class felony as of the date of the present offense." *Id.* ¶ 15.

¶ 16    Our supreme court identified the "precise question" as "whether the legislature intended a prior felony conviction to be a qualifying offense for Class X sentencing if the same offense would have resulted in a juvenile adjudication had it been committed on the date of the present offense." *Id.* ¶ 16. Our supreme court remarked that "the statute is silent" on this question, which had "resulted in a split in our appellate court." *Id.* ¶¶ 16-17. The court cited three First District decisions holding that a prior conviction is not a predicate for Class X sentencing if it would now be resolved through delinquency proceedings, as well as a contrary Fourth District decision. *Id.* ¶ 17 (comparing *People v. Martinez*, 2021 IL App (1st) 182553, ¶ 63, *People v. Williams*, 2020 IL App (1st) 190414, ¶ 21, and *People v. Miles*, 2020 IL App (1st) 180736, ¶ 11, with *People v. Reed*, 2020 IL App (4th) 180533, ¶ 25 (holding that prior conviction based on

offense when defendant was 17 years old was a qualifying predicate conviction for Class X sentencing)).

¶ 17      Our supreme court indicated that the statute's silence was an "ambiguity" but that "[l]egislation enacted after the appellate court rendered its conflicting decisions *** clarified that the General Assembly did not intend for convictions of juveniles in adult court to be considered qualifying offenses for Class X sentencing." *Id.* ¶ 18. Specifically, "Public Act 101-652 (eff. July 1, 2021) amended section 5-4.5-95(b)(4) of the Code to provide that the first qualifying offense for Class X sentencing must have been 'committed when the person was 21 years of age or older.' *Id.* (amending 730 ILCS 5/5-4.5-95(b)(4))." *Id.* ¶ 19.

¶ 18      Our supreme court went on to determine that this amendment was a clarification of existing law, rather than a change in law. It recognized that "[a]lthough a statutory amendment creates a presumption that it was intended to change existing law, this presumption is not controlling. [Citation.]" *Id.* ¶ 20. It explained that circumstances surrounding an amendment may indicate that "legislature intended merely to interpret or clarify the original act." *Id.* Our supreme court explained that circumstances indicating a "legislative intent to clarify rather than make a substantive change in the law include" (1) whether the legislature "declared that it was clarifying a prior enactment," (2) whether a "conflict or ambiguity existed prior to the amendment," and (3) whether the amendment is "consistent with a reasonable interpretation of the prior enactment and its legislative history." (Internal quotation marks omitted.) *Id.*

¶ 19      Our supreme court emphasized that "prior to the legislature amending section 5-4.5-95(b) of the Code, a conflict in our appellate court existed" as to whether a prior conviction that would now result in a juvenile adjudication could constitute a predicate offense for Class X sentencing. *Id.* ¶ 21 (citing the conflicting decisions in *Miles*, 2020 IL App (1st) 180736, ¶ 11 and

*Reed*, 2020 IL App (4th) 180533, ¶ 26). *Stewart* found these conflicting decisions "negate[d] the presumption that the legislature intended to change existing law when it amended the statute to require that qualifying offenses must have been committed when the person was 21 years of age or older. [Citation.]" *Id.* ¶ 22.

¶ 20    Our supreme court in *Stewart* "conclude[d] that Public Act 101-652 was intended to resolve the conflict in the appellate court and clarify the meaning of the original statute." *Id.* Therefore, the *Stewart* defendant's "conviction for an offense committed when he was 17 years old was not a qualifying offense for Class X sentencing under the previous version of section 5-4-95(b) of the Code." *Id.* Thus, his sentence was "properly vacated *** based on his statutory ineligibility for Class X sentencing." *Id.* ¶ 23.

¶ 21                The Supreme Court's Supervisory Order in This Case

¶ 22    On December 6, 2022, defendant filed a petition for leave to appeal in our supreme court. On March 29, 2023, our supreme court entered a supervisory order in which it denied defendant's petition for leave to appeal. However, the supreme court directed us to vacate our September 2022 order and to "consider the effect of this Court's opinion in *People v. Stewart*, 2022 IL 126116, on the issue of whether defendant's life sentence is unconstitutional and determine if a different result is warranted."

¶ 23    The mandate for the supervisory order was issued on May 3, 2023. Shortly thereafter, we vacated our September 2022 order. In addition, we directed OSAD to notify this court whether it wished to maintain its motion to withdraw from the appeal pursuant to *Finley*. In response, OSAD moved for leave to withdraw its previously filed motion to withdraw. We allowed that motion and

set a briefing schedule for the parties to address the supreme court's supervisory order. The matter has now been fully briefed and orally argued before this court.

¶ 24                                    ANALYSIS

¶ 25    Defendant now asserts that, in light of *Stewart*, the trial court erred when it denied his motion for leave to file a successive postconviction petition challenging his natural life sentence as unconstitutional. He argues that *Stewart*'s analysis of Public Act 101-652's amendment to the Class X sentencing provision in subsection (b) of section 5-4.5-95 of the Code (730 ILCS 5/5-4.5-95(b) (West 2022)) applies equally to the "identical" amendment to the habitual criminal provision in subsection (a) of the same section of the Code. *Id.* § 5-4.5-95(a). Defendant correctly points out that Public Act 101-652 simultaneously amended both subsection (a) and (b) to add the same language regarding defendant's age when a predicate offense was committed. Pub. Act 101-652 (eff. July 1, 2021) (amending 730 ILCS 5/5-4.5-95(a), (b)). That is, both subsections now specify that the "first offense [must have been] committed when the person was 21 years of age or older" for a person to be adjudged as a habitual criminal or to be subject to Class X sentencing. 730 ILCS 5/5-4.5-95(a)(4)(E), (b)(4) (West 2022). Defendant suggests that *Stewart*'s discussion of legislative intent applies to both subsections, such that *both* amendments to subsection (a) and subsection (b) were "merely clarifying the long-standing provisions [that] the State cannot *** use crimes committed by the defendant prior to the age of 21 as a predicate offense" for *either* provision. He proceeds to argue that because *Stewart* narrowed the scope of a criminal statute, it is a substantive rule that applies on collateral review.

¶ 26    In response, the State contends that *Stewart* is inapplicable because it was limited to the specific amendment to the Class X sentencing provision in subsection (b) of section 5-4.5-95 but

does not extend to the simultaneous amendment to the habitual criminal provision in subsection (a). The State suggests that *Stewart*'s rationale for finding that the 2021 amendment was a mere clarification of subsection (b) is not applicable to subsection (a). Whereas *Stewart* found the prior version of subsection (b) was "silent" as to defendant's age at the time predicate offenses, the State urges that the previous version of the habitual criminal provision was *not* silent but required that the person was at least 18 years old at the time of the third offense. See 730 ILCS 5/5-4.5-95(a)(5) (West 2016) ("Anyone who, having attained the age of 18 at the time of the third offense, is adjudged an habitual criminal [and] shall be sentenced to a term of natural life imprisonment."). The State points out that the 2021 amendment to the habitual criminal provision eliminated the phrase referencing the age of 18 as of the *third* offense and added that a person must be at least 21 years old at the time of the *first* offense. See 730 ILCS 5/5-4.5-95(a)(4)(E) (West 2022). For that reason, the State argues that the 2021 amendment to subsection (a) was not a "mere clarification" of existing law but substantively changed the habitual criminal provision. In turn, the State argues that the amendment does not apply retroactively to benefit defendant.

¶ 27    In his reply brief, defendant acknowledges that "as of 2016, subsection (a) was amended to include an age qualifier" for a defendant's third offense. 730 ILCS 5/5-4.5-95(a)(5) (West 2016). Yet, defendant maintains the 2016 amendment "has no impact upon the 2021 clarification by the legislature." According to defendant: "The 2021 amendment pertains to whether an offense committed when the defendant was a juvenile can be used as one of the two predicates for the 'Habitual Criminal' provisions of section 5-4.5-95, whereas the 2016 amendment pertains to the offender's age at the time of the 3rd offense."

¶ 28    At oral argument, defendant reiterated his position that *Stewart* reflects that the identically worded 2021 amendment to both subsections (a) and (b) must be regarded as the legislature's clarification of its original intent for both provisions—that crimes committed before age 21 should not count as predicates for either habitual criminal status or Class X sentencing. Defendant also points out that, following a similar supervisory order pursuant to *Stewart*, the Fourth District ordered resentencing for a defendant sentenced under the habitual criminal provision before the 2021 amendment. *People v. O'Neal*, 2023 IL App (4th) 170682-UB (accepting the State's concession that under *Stewart*, the court was required to vacate defendant's natural life sentence and remand for resentencing, where one of the predicate offenses for adjudging him a habitual criminal was committed when he was 17 years old).[2]

¶ 29    We keep in mind that our role on remand from the supervisory order is to consider what effect (if any) the *Stewart* decision has on the merits of defendant's claim, which is premised on the 2021 amendment to the habitual criminal provision. The parties do not dispute that *Stewart* determined that when Public Act 101-652 amended the Class X sentencing provision to add that the "first offense [must be] committed when the person was 21 years of age or older," it was a clarification of existing law, rather than a change in law. *Stewart*, 2022 IL 126116, ¶ 22. There is also no dispute that Public Act 101-652 *simultaneously* added the same phrase to the habitual criminal provision. Essentially, the parties dispute whether *Stewart*'s "clarification" analysis applies only to the Class X sentencing provision contained in subsection (b) of section 5-4.5-95 of the Code or if it also extends to the habitual criminal provision in subsection (a).

_____

[2]At oral argument, defendant acknowledged that the State is not bound in this case by the concession it made in *O'Neal*, 2023 IL App (4th) 170682-UB.

¶ 30    For the following reasons, we agree with defendant that *Stewart*'s discussion of Public Act 101-652's amendment to the Class X provision in subsection (b) must inform our interpretation of the simultaneous amendment to the habitual criminal provision in subsection (a). Moreover, contrary to the State's suggestion, our conclusion is not undermined by the legislative history of the habitual criminal provision. Rather, we think Public Act 101-652 is properly viewed as the legislature's restoration of the original intended meaning for both subsection (a) and (b)—that convictions under age 21 should not be used as predicate offenses.

¶ 31    We recognize that *Stewart* did not explicitly discuss the legislative intent behind the amendment to the habitual criminal provision. Nevertheless, as a matter of logic, *Stewart*'s discussion of the legislative intent behind Public Act 101-652's amendment to the Class X provision in subsection (b) cannot be viewed in isolation from the legislature's simultaneous and substantially identical amendment to the habitual criminal provision. That is, *Stewart*'s conclusion that the Class X sentencing amendment was intended as a clarification of existing law (and *not* limited to prospective application) must inform our reading of the virtually identical amendment to the habitual criminal provision.

¶ 32    We emphasize that both amendments were implemented simultaneously, as part of the same public act. Further, the legislature inserted the exact same language at subsection (a) and (b) of section 5-4.5-95 of the Code to state that, to be adjudged as a habitual criminal or to be eligible for Class X sentencing, the "first offense [must have been] committed when the person was 21 years of age or older." 730 ILCS 5/5-4/5-95(a)(4)(E), (b)(4) (West 2022). Given these circumstances, it is hard to conceive how the legislature could have intended one of the amendments to be a mere clarification of existing law (that applied retroactively), while having a

very different intent for the other identically worded amendment. Indeed, it would be incongruous and defy common sense to find the legislature did not act with similar intent when it added identical provisions at the very same time in the same public act. Rather, we think it is reasonable to presume that simultaneous, identical amendments within the same section of the Code were driven by the same legislative intent and purpose.

¶ 33    This is consistent with the general principle that, in discerning legislative intent, statutory "words and phrases must be construed in relation to other relevant statutory provisions and not in isolation." *Board of Education of Chicago v. Moore*, 2021 IL 125785, ¶ 20; *People v. Ashley*, 2020 IL 123989, ¶ 36 (same.) Ascribing the same intent to similarly worded amendments is also consistent with the principle that "where a word is used in different sections of the same statute, the presumption is that the word is used with the same meaning throughout the statute, unless a contrary legislative intent is clearly expressed." *Ashley*, 2020 IL 123989, ¶ 36.

¶ 34    In Public Act 101-652, the legislature simultaneously added the same language regarding the minimum age for the commission of predicate offenses to support either Class X sentencing or to be adjudged a habitual criminal. Our supreme court has now determined that the legislative intent for the Class X sentencing amendment was to clarify existing law, such that its minimum age requirement applied even to a person who was sentenced as a Class X offender before the 2021 amendment. *Stewart*, 2022 IL 126116, ¶¶ 22-23 (vacating defendant's Class X sentence imposed in 2017 based in part on conviction for offense committed when he was 17 years old). We agree with defendant that *Stewart* should guide our reading of the intent behind the legislature's simultaneous amendment specifying an identical minimum age requirement for prior offenses used to sentence an individual as a habitual criminal.

¶ 35    We acknowledge, as emphasized by the State, that the legislative history of the habitual criminal provision differs from that of the Class X sentencing provision. Specifically, the version of the habitual criminal provision immediately preceding Public Act 101-652 (in effect from 2016 to 2021), indicated that persons as young as 18 could be adjudged a habitual criminal. See 730 ILCS 5/5-4.5-95(a)(5) (West 2020) ("Anyone who, having attained the age of 18 at the time of the third offense, is adjudged an habitual criminal shall be sentenced to a term of natural life imprisonment."). Before 2016, the habitual criminal provision did not specify any minimum age. See 730 ILCS 5/5-4.5-95(a) (West 2014).

¶ 36    The State urges that the "age of 18" language in the immediately preceding version of the habitual criminal provision means that the new language added by Public Act 101-652 must be regarded as a substantive change in law. The State argues that this differentiates the 2021 amendment of the habitual criminal provision in subsection (a) from *Stewart*'s discussion of the simultaneous amendment to the Class X sentencing provision in subsection (b).

¶ 37    We disagree. Viewing the legislative history of both subsections (a) and (b) in light of *Stewart*, we read the 2021 amendment in Public Act 101-652 as effecting a clarification and restoration of the original meaning behind both subsections. Under our reading, the legislature originally intended that convictions for crimes under age 21 should not count toward *either* habitual criminal status under subsection (a) or Class X sentencing under subsection (b). Then, from 2016 until 2021, the legislature made subsection (a) more punitive by grafting the "age of 18" language into the habitual criminal provision. In 2021, Public Act 101-652 restored subsections (a) and (b) to their original intended meaning, explicitly clarifying that only offenses

committed after the age of 21 should count toward eligibility for habitual criminal status or Class X sentencing. This reading is consistent with *Stewart* and the legislative history of both provisions.

¶ 38 Accordingly, pursuant to *Stewart*, we hold that the 2021 amendment to the habitual criminal provision must be regarded as a clarification and restoration of the original law, such that it is not limited to prospective effect. That is, the requirement that predicate offenses must have been committed after age 21 applies to individuals who were sentenced as habitual criminals before the passage of Public Act 101-652 in 2021.

¶ 39 We further agree with defendant that this conclusion, derived from *Stewart*, applies to cases on collateral review, including his case. As this court has explained:

> " 'A judicial decision that establishes a new constitutional rule applies to all criminal cases pending on direct review.' *People v. Davis*, 2014 IL 115595, ¶ 36 (citing *Schriro v. Summerlin*, 542 U.S. 348, 351 (2004)). As to convictions that are already final, however, a new rule does not apply retroactively to cases on collateral review except in two instances. First, ' "[n]ew *substantive* rules generally apply retroactively." ' (Emphasis in original.) *Id.* (quoting *Schriro*, 542 U.S. at 351). Substantive rules include those that narrow the scope of a criminal statute by interpreting its terms, and constitutional determinations that place particular conduct or persons covered by the statute beyond the State's power to punish. *Id.* (citing *Schriro*, 542 U.S. at 351-52)." *Reed*, 2014 IL App (1st) 122610, ¶ 86.

Substantive rules "apply retroactively because they necessarily carry a significant risk that a defendant stands convicted of an act that the law does not make criminal or faces a punishment that the law cannot impose upon him." (Internal quotation marks omitted.) *People v. Davis*, 2014 IL 115595, ¶ 36.

¶ 40 We agree with defendant that *Stewart* effectively "narrow[ed] the scope of a criminal statute by interpreting its terms," such that it constitutes a substantive rule that applies retroactively to cases on collateral review. *Reed*, 2014 IL App (1st) 122610, ¶ 86. Accordingly, defendant benefits from the *Stewart* decision and our foregoing discussion of how its holding extends to the 2021 amendment to the habitual criminal provision requiring that predicate offenses must be committed after age 21.

¶ 41 We thus find that defendant was improperly sentenced to natural life as a habitual criminal, insofar as his sentence was premised on a predicate offense committed when he was under 21 years of age. His sentence violated the habitual criminal provision in section 5-4.5-95(a) of the Code, and it also constituted a violation of his constitutional due process rights. See *United States v. Shipp*, 589 F.3d 1084 (10th Cir. 2009) (finding due process violation where defendant was improperly sentenced as an "armed career criminal" under the Armed Career Criminal Act of 1984 (18 U.S.C. 924(e)(2) (2009), where one of the predicate offenses underlying the sentence was not a "violent felony" within the meaning of that statute).[3]

---

[3] As we agree that defendant's due process rights were violated, we need not additionally assess the merits of his argument that his sentence violates the proportionate penalties clause of the Illinois Constitution (Ill. Const. 1970 art. I, § 11) because it shocks the moral sense of our community. See *People v. Guevara*, 216 Ill. 2d 533, 543 (2005) ("[A] sentence violates the proportionate penalties clause if it is so cruel, degrading, or disproportionate to the offense that the sentence shocks the moral sense of the community. [Citations.]").

¶ 42   As to the appropriate remedy, we find that there is no need for further postconviction proceedings since there are no disputed issues of fact. That is, defendant is entitled to resentencing under *Stewart* and its application to the habitual sentencing provision.

¶ 43                                    CONCLUSION

¶ 44   For the foregoing reasons, we reverse the circuit court's denial of defendant's petition for leave to file a *pro se* successive postconviction petition, vacate his natural life sentence, and remand for resentencing in accordance with this order.

¶ 45   Reversed and remanded.

¶ 46   JUSTICE HYMAN, specially concurring:

¶ 47   "Ultimately, the issue of the status of mercy in judgment and punishment confronts us with a fundamental question: What are the values and virtues of society, and the judges acting in its name?" Doron Menashe, *Should We Be Merciful to the Merciless—Mercy in Sentencing*, 35 Emory Int'l L. Rev. 549, 593 (2021). For the Illinois legislature, the Illinois Supreme Court, and the majority in this case, the answer, as it applies to Class X for convictions before the age of 21, aligns with Illinois's evolving view on juvenile justice, taking into account the root causes of delinquency, developmental immaturity, and greater potential for rehabilitation.

¶ 48   The courts and the legislature act within constitutional constraints regarding "[a]ll penalties" with an eye toward both "the seriousness of the offense" and "the objective of restoring the offender to useful citizenship." Ill. Const. 1970, art. I, § 11. Punishment for crime, yes, but with the restoration of the offender into a constructive member of society for any sentence they receive. Indeed, last year, our supreme court reaffirmed this commitment in the sentencing of emerging adults: "Illinois law [has long] recognized the special status of juvenile offenders for

purposes of applying the principles under the proportionate penalties clause." (Internal quotation omitted.) *People v. Moore*, 2023 IL 126461, ¶ 41 (discussing *People v. Clark*, 2023 IL 127273, ¶ 61).

¶ 49    After the ratification of the 1970 Illinois Constitution, the legislature crafted new sentencing laws that fixed natural life for some violations of a new class of felonies, Class X. See, *e.g.*, 720 ILCS 5/33B-1 (West 2000) (now codified at 730 ILCS 5/5-4.5-95(a) (West 2022)). See generally David H. Norris & Thomas Peters, *Fiscal Responsibility and Criminal Sentencing in Illinois: The Time for Change Is Now*, 26 J. Marshall L. Rev. 317, 323-34 (1993) (discussing history of tough-on-crime sentencing laws post-ratification).

¶ 50    Did Class X mean that some criminals are incapable of returning to useful citizenship? See *People v. Hartfield*, 137 Ill. App. 3d 679, 692 (1985) (asserting "[i]mplicit in this statute is a legislative determination that a three-time offender should be removed from society since he [or she] is impervious to the rehabilitative efforts of the State"). Although our supreme court once answered in the affirmative (*People v. Dunigan*, 165 Ill. 2d 235, 246-47 (1995)), 30 years later, the legislature and the courts have reduced the use of life sentences without the possibility of parole for juvenile offenders, signifying a broad societal acknowledgment that offenders under 21 years should not be subjected to the same harsh penalties as adults.

¶ 51    Over time, tough-on-crime laws precipitated an explosion in the prison population. According to one study, the national population of people serving life sentences in 2020 exceeded the size of the entire prison population in 1970, the year Illinois ratified its most recent constitution. See *People Serving Life Exceeds Entire Prison Population of 1970*, The Sentencing Project (Feb.

20, 2020), https://www.sentencingproject.org/publications/people-serving-life-exceeds-entire-prison-population-1970/ [https://perma.cc/WP74-7WUY].

¶ 52    Among the many facing these unsparing sentencing laws was Denzal Stewart, whose appeal in *People v. Stewart*, 2022 IL 126116, informs the majority's analysis. In *Stewart*, the supreme court held that the legislature did not intend for a prior conviction like Stewart's—for an offense committed at age 17—to constitute a qualifying offense for Class X sentencing. *Id.* ¶ 22. Relying on *Stewart*, the majority holds the same amendments that impacted Stewart's sentence impacted Durant's. *Supra* ¶ 37 (analyzing 720 ILCS 5/33B-1 (West 2000) and 730 ILCS 5/5-4.5-95(a)(4)(E), (b)(4) (West 2022)). Holding otherwise, as the dissent would do (*infra* ¶ 59), thwarts the proportionate penalties clause. See *People v. Buffer*, 2019 IL 122327, ¶ 40 (noting shared duty of court and legislature to administer "[g]reat constitutional provisions" with "caution" (internal quotation marks omitted)).

¶ 53    But we need not address that issue today. It is enough to follow the logic of *Stewart* and, by doing so, heed Durant's plea at his original sentencing hearing:

> "I'd just ask the Court to show mercy, you know, give me another chance. That's all I can ask. I don't know if the law permits it or whatever, but I just ask that you listen to it and just show mercy."

¶ 54    Properly understood, section 5-4.5-95(a) partially answers the question at the beginning of this special concurrence while also realizing the mercy Durant invoked.

¶ 55    JUSTICE LAVIN, dissenting:

¶ 56    For the reasons to follow, I respectfully dissent. First, the plain language of the habitual criminal statute under which defendant was sentenced (720 ILCS 5/33B-1 (West 2004)) is simply

not ambiguous.[4] Defendant has not identified any split of authority regarding that subsection of the statute, as it stood at his sentencing. *Cf. People v. Stewart*, 2022 IL 126116, ¶ 17. Based on his prior convictions of numerous Class X offenses, the statute clearly did apply. There was no age limitation at all, and he met all the requirements for sentencing as a habitual criminal as delineated below. See *People v. Wallace*, 2023 IL App (1st) 200917, ¶¶ 33-34.

¶ 57    Second, even assuming any ambiguity existed, defendant cannot benefit from the legislature's recent amendment because the amendment was substantive and, thus, does not apply retroactively. See *People v. Hunter*, 2017 IL 121306, ¶ 22 (noting substantive changes to statutes are prospective only); *People v. Barry*, 2023 IL App (2d) 220324, ¶¶ 22-24 (noting "prospective application promotes finality in sentencing by refusing to disturb charging and sentencing decisions that were valid when imposed"); *People v. Profit*, 2023 IL App (1st) 210881, ¶¶ 29-31; *cf. People v. Reed*, 2014 IL App (1st) 122610, ¶ 86 (stating that *a judicial decision* establishing a new constitutional rule applies retroactively where that rule narrows the scope of a criminal statute). As the State notes, the age limitation for a mandatory natural life sentence under subsection 5-4.5-95(a) of the Unified Code of Corrections and its predecessor subsections has varied from (1) containing no age requirement (when defendant was sentenced in 2005), to (2) requiring the defendant to be 18 years old at the time of the *third* Class X offense (starting in 2016), to (3) requiring the defendant to be 21 years old at the time of the *first* Class X offense and eliminating the prior age requirement (starting on July 1, 2021). See 720 ILCS 5/33B-1 (West 2004); 730 ILCS 5/5-4.5-95(a)(5) (West 2016); 730 ILCS 5/5-4.5-95(a)(4)(E) (West 2022); *cf.*

---

[4]We note that section 33B-1 (720 ILCS 5/33B-1 (West 2004)) was repealed in 2009 and now appears in section 5-4.5-95(a) of the Unified Code of Corrections. 730 ILCS 5/5-4.5-95(a) (West 2022); Pub. Act 95-1052 (eff. July 1, 2009).

*Stewart*, 2022 IL 126116, ¶¶ 18, 22 (addressing section 5-4.5-95(b), which required the defendant to be 21 years of age even at the time he was originally sentenced).

¶ 58    For a person to have committed a third Class X offense at 18 years old after having been separately convicted of two prior Class X offenses, that person necessarily had to have been a juvenile at the time of those earlier convictions. As such, until July 1, 2021, an adult who had been convicted of two prior Class X offenses as a juvenile could be sentenced under section 5-4.5-95(a) to natural life following a third Class X offense at the age of 18 or older. *People v. Richardson*, 2015 IL 118255, ¶¶ 10-11 (noting statutory changes must have a beginning and may necessarily exclude one group from benefitting from the amendment without violating the constitution). This rebuts any possible inference that the legislature merely intended to clarify the statute. *Cf. Stewart*, 2022 IL 126116, ¶¶ 18, 22 (noting that the previous version of the statute was silent, and the legislative amendment clarified existing law).

¶ 59    Given the crucial differences between the legislative history behind subsection 5-4.5-95(a) and subsection (b), *Stewart*'s reasoning regarding subsection (b) cannot logically be applied to the changes made to subsection (a) by Public Act 101-652 (eff. July 1, 2021) (amending 730 ILCS 5/5-4.5-95(a), (b)). Moreover, *Stewart* did not even hold that its interpretation of subsection (b) could apply retroactively to cases on collateral review. The only reasonable interpretation of the changes to subsection 5-4.5-95(a) is that, the legislature made a deliberate choice to substantively amend the habitual criminal statute's requirements as to the age of the offender. See *Stewart*, 2022 IL 126116, ¶ 20; *People v. Hilliard*, 2023 IL 128186, ¶ 38 (stating that "[t]he legislature's determination of a particular punishment for a crime in and of itself is an expression of the general moral ideas of the people"). Thus, at the time defendant was sentenced in 2005, the legislature

intended that his Class X convictions, even those he earned as a juvenile, be counted towards his tally for sentencing as a habitual offender. See 720 ILCS 5/33B-1 (West 2004); *Richardson*, 2015 IL 118255, ¶¶ 10-11.

¶ 60    Here, the record shows that defendant committed his first armed robbery in 1985 at age 16, two armed robberies in 1991 at age 22, and the offenses on which the instant conviction rests, an armed robbery and vehicular highjacking, in 2001 at or around age 32. As to the 1985 offense committed at age 16, defendant was sentenced as an adult and pleaded guilty to the offense. Defendant has not shown that he should be subject to any special conditions as a result of his youth or background as a youth, as he continued to habitually offend by committing Class X offenses long into his adulthood. Nor has he established a violation of his due process rights. Consequently, he has not shown the cause and prejudice necessary for leave to file a successive postconviction petition. I would affirm the circuit court's denial of leave to file defendant's petition.

---

*People v. Durant*, **2024 IL App (1st) 211190-B**

---

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 01-CR-22873; the Hon. Vincent M. Gaughan, Judge, presiding. |

---

| | |
|---|---|
| **Attorneys for Appellant:** | James E. Chadd, Douglas R. Hoff, and Christofer R. Bendik, of State Appellate Defender's Office, of Chicago, for appellant. |

---

| | |
|---|---|
| **Attorneys for Appellee:** | Kimberly M. Foxx, State's Attorney, of Chicago (Enrique Abraham, Douglas P. Harvath, and John E. Nowak, Assistant State's Attorneys, of counsel), for the People. |

---