**2022 IL 128031**

# IN THE

# SUPREME COURT

# OF

# THE STATE OF ILLINOIS

_____

(Docket No. 128031)

*In re* KELAN W., a Minor (The People of the State of Illinois, Appellee,
v. Kelan W., Appellant).

*Opinion filed October 6, 2022.*

JUSTICE THEIS delivered the judgment of the court, with opinion.

Justices Neville, Michael J. Burke, Overstreet, and Carter concurred in the
judgment and opinion.

Chief Justice Anne M. Burke specially concurred, with opinion.

Justice Holder White took no part in the decision.

**OPINION**

¶ 1 At issue in this appeal is whether, under section 5-120 of the Juvenile Court Act
of 1987 (Act) (705 ILCS 405/5-120 (West 2020)), a minor may be adjudicated

delinquent for unlawful conduct committed outside of Illinois. The circuit court of St. Clair County found that section 5-120 does not provide such authority and dismissed the count of the delinquency petition against respondent Kelan W., a minor, that involved his alleged criminal conduct in Missouri. The appellate court reversed the circuit court's order and allowed all four counts of the delinquency petition against respondent to proceed. 2021 IL App (5th) 210029, ¶ 24. For the reasons that follow, we affirm the appellate court's judgment.

¶ 2                                    BACKGROUND

¶ 3        On August 27, 2020, respondent, while in Missouri with an adult accomplice, allegedly took Joshua Luterman's 2019 Volkswagen Jetta by force or the threat of force. The two then drove the car across the river into Illinois, where they were both apprehended. Respondent was 16 years old at the time of the offense. He resides in Illinois with his mother.

¶ 4        On September 28, 2020, the State filed an amended four-count petition to adjudicate respondent a delinquent minor. Count I alleged that, on August 27, 2020, while in Missouri, respondent took a motor vehicle by force or threat of force, while armed with a firearm, in violation of section 18-4(a) of the Criminal Code of 2012 (Code) (720 ILCS 5/18-4(a) (West 2020)) (aggravated vehicular hijacking) and section 570.023 of Missouri's Revised Criminal Code (Mo. Rev. Stat. § 570.023 (Supp. 2017)) (robbery, first degree). Counts II to IV alleged that, on the same date, while in Illinois, respondent committed unlawful possession of a stolen motor vehicle (625 ILCS 5/4-103(a)(1) (West 2020)), aggravated unlawful use of a weapon by a person under 21 (720 ILCS 5/24-1.6(a)(1), (3)(I) (West 2020)), and theft (*id.* § 16-1(a)(4)).

¶ 5        Respondent filed a motion to dismiss count I on the ground that the circuit court did not have the authority to consider a prosecution for acts committed by a juvenile entirely outside of Illinois. In response, the State asserted that juvenile court procedure is defined by statute and that delinquency proceedings based on out-of-state conduct are explicitly permitted under section 5-120 of the Act (705 ILCS 405/5-120 (West 2020)).

¶ 6       On January 6, 2021, the circuit court entered an order holding that it did not have the authority, or the required jurisdiction, to rule on violations of Missouri law. Consequently, the circuit court dismissed count I and allowed the remaining three counts to proceed.

¶ 7       The appellate court reversed and remanded for further proceedings on all four counts. 2021 IL App (5th) 210029, ¶ 24. The appellate court found that the plain language of section 5-120 of the Act is clear and unambiguous and that it authorizes delinquency proceedings against a minor in Illinois who violates another state's law. *Id.* ¶ 22. The appellate court therefore found that the circuit court erred as a matter of law in dismissing the charge contained in count I. *Id.*

¶ 8       This court granted respondent's petition for leave to appeal. Ill. S. Ct. R. 315 (eff. Oct. 1, 2020).

¶ 9                                    ANALYSIS

¶ 10      The sole issue before us is whether, under section 5-120 of the Act, the State may bring a juvenile delinquency petition against respondent for alleged unlawful conduct committed outside of Illinois.

¶ 11      The parties agree that this question is a narrow one, concerning the proper construction of the Act, subject to *de novo* review. *People v. Giraud*, 2012 IL 113116, ¶ 6. The principles guiding our analysis are well established. Our primary objective is to ascertain and give effect to legislative intent, the surest and most reliable indicator of which is the statutory language itself, given its plain and ordinary meaning. *Id.* In determining the plain meaning of statutory terms, we consider the statute in its entirety, keeping in mind the subject it addresses and the apparent intent of the legislature in enacting it. *Id.* Where the language of the statute is clear and unambiguous, we must apply it as written, without resort to extrinsic aids to statutory construction. *Id.*

¶ 12      This appeal turns on the proper construction of section 5-120 of the Act, which states:

"Exclusive jurisdiction. Proceedings may be instituted under the provisions of this Article concerning any minor who prior to his or her 18th birthday has

- 3 -

violated or attempted to violate, *regardless of where the act occurred, any* federal, State, county or municipal law or ordinance. Except as provided in Sections 5-125, 5-130, 5-805, and 5-810 of this Article, no minor who was under 18 years of age at the time of the alleged offense may be prosecuted under the criminal laws of this State." (Emphasis added.) 705 ILCS 405/5-120 (West 2020).

As this court has previously explained, "section 5-120's title is misleading, as [this] section is *not* in fact a grant of authority to the circuit court. Rather, section 5-120 is a grant of authority to *the State*, specifically defining the class of persons against whom the State may lawfully initiate delinquency proceedings." (Emphases in original.) *In re Luis R.*, 239 Ill. 2d 295, 304 (2010).

¶ 13    We find the language of section 5-120 unambiguously authorizes delinquency proceedings in Illinois when a minor engages in unlawful conduct in this or any other state. Our legislature chose to use the word "any" in this provision before "federal, State, county or municipal law or ordinance." The word "any" is defined "to indicate one that is selected without restriction or limitation of choice." Webster's Third New International Dictionary 97 (1993). The legislature's use of the word "any" in this regard demonstrates its intent to authorize the State to initiate delinquency proceedings for unlawful conduct by a minor, including for a violation of another state's laws. Additionally, the legislature expressly excluded any geographic restriction on the conduct of a minor that may result in a delinquency proceeding by including language authorizing such a proceeding for conduct "regardless of where the act occurred." 705 ILCS 405/5-120 (West 2020). This further demonstrates the legislature's intent to extend the reach of delinquency proceedings for violations that occur in Illinois as well as in other states. See generally *In re H.G.*, 322 Ill. App. 3d 727, 735-36 (2001) (holding that, by inserting language "regardless of where the act occurred," the legislature has specifically excluded in section 5-120 a requirement to prove in a juvenile proceeding the location of the offense). Consistent with section 5-120, we note the Act utilizes identical language in defining a delinquent minor as "any minor who prior to his or her 18th birthday has violated or attempted to violate, *regardless of where the act occurred, any* federal, State, county or municipal law or ordinance." (Emphasis added.) 705 ILCS 405/5-105(3) (West 2020).

¶ 14		Furthermore, section 5-120 specifically authorizes prosecution in juvenile court in Illinois for a violation of any federal law, "regardless of where the act occurred." That a minor may be adjudicated delinquent for violating any federal law, whether in Illinois or elsewhere, further supports our conclusion that "any *** State *** law" was similarly intended by the legislature not to be limited to violations that occur in Illinois.

¶ 15		Respondent attempts to circumvent the plain language of section 5-120 by arguing that it does not allow prosecution for his alleged conduct in Missouri because the legislature chose to capitalize "State" to refer to the "State of Illinois." As the appellate court recognized, respondent points to no grammar, style, or principle of bill drafting to show that capitalization of the word "State" always indicates the State of Illinois. We similarly find no evidence that capitalization of the word "State" with no qualifying language such as "this" or "State of Illinois," means only "State of Illinois." Respondent's suggested construction would also require this court to improperly construe the word "State" in section 5-120 in isolation, rather than in light of the other words and phrases in the provision. It is well settled that when the language of a statute is clear and unambiguous it must be applied as written, and we cannot depart from the plain language by reading into it exceptions or limitations not expressed by our legislature. *In re Jarquan B.*, 2017 IL 121483, ¶ 22.

¶ 16		Similarly, respondent's reliance upon section 5-101(3) of the Act's purpose and policy provision, in conjunction with the adult criminal jurisdiction provision contained in section 1-5(a) of the Code (720 ILCS 5/1-5(a)(1) (West 2020)) is misplaced. He relies upon these provisions to support his argument that a juvenile may not be found delinquent for a crime committed outside of Illinois because an adult could not be similarly prosecuted in Illinois. Section 5-101(3) of the Act provides, in pertinent part, that "minors shall have all the procedural rights of adults in criminal proceedings, unless specifically precluded by laws that enhance the protection of such minors." 705 ILCS 405/5-101(3) (West 2020). For purposes of adult prosecution, section 1-5(a)(1) of the Code provides that a person is subject to prosecution for an offense in Illinois if the offense is "committed either wholly or partly within the State." 720 ILCS 5/1-5(a)(1) (West 2020). Simply put, section 1-5 of the Code does not inform our decision on the proper construction of section 5-120 of the Act. Rather, it provides the reach of this state's criminal jurisdiction for

adults; it does not bestow any procedural rights on adult criminal defendants that would be applicable to juveniles in a delinquency proceeding.

¶ 17        Respondent also asserts that, if this delinquency proceeding may proceed for conduct that occurred in Missouri, it may be difficult for counsel to interview witnesses in another state and to issue subpoenas and request witnesses from another state to testify and it may require counsel to familiarize himself with the laws of another state. As the appellate court recognized, these arguments are simply based on practical and policy objections to juvenile delinquency proceedings based on out-of-state conduct. The only issue we are addressing in this appeal is whether the State has the authority to initiate delinquency proceedings for an offense that was not committed in Illinois. That question requires us only to interpret the plain language of section 5-120, without consideration of any potential inconveniences to the court, witnesses, or counsel.

¶ 18        Finally, we note that the purpose of the Act is to promote a juvenile justice system capable of dealing with the problem of juvenile delinquency, a system that will protect the community, impose accountability for violations of the law, and equip juvenile offenders with competencies to live responsibly and productively. 705 ILCS 405/5-101 (West 2020). A delinquency adjudication is not the legal equivalent of a felony conviction. *In re Lakisha M.*, 227 Ill. 2d 259, 269-70 (2008). This court has long found that, "[e]ven as the legislature recognized that the juvenile court system should protect the public, it tempered that goal with the goal of developing delinquent minors into productive adults, and gave the trial court options designed to reach both goals." *In re Rodney H.*, 223 Ill. 2d 510, 520 (2006).

¶ 19        The Act also instructs that "juvenile justice polices" should, *inter alia*, "[i]nclude the minor's family in the case management plan," "[a]llow minors to reside within their homes whenever possible and appropriate and provide support necessary to make this possible," and "[p]rovide programs and services that are community-based and that are in close proximity to the minor's home." 705 ILCS 405/5-101(2) (West 2020). Additionally, the Act allows the court to "transfer the case to the county of the minor's residence" if the "proceedings are commenced in any [other] county." *Id.* § 5-135(2). We agree with the State that the Act's rehabilitative purposes, along with its policies emphasizing family and community involvement to advance those goals, support our finding that the legislature

intended to permit delinquency proceedings for unlawful conduct committed by an Illinois minor in another state. Illinois is likely to be in a better position than another state to ensure that family and community are involved in our juveniles' rehabilitative process, and it may help reduce disruption to the minor's life to receive necessary services in his or her home state.

¶ 20 Because we hold that the plain language of the Act allows for a delinquency proceeding for out-of-state conduct, the circuit court erred in dismissing count I of the petition against respondent.

¶ 21 CONCLUSION

¶ 22 Accordingly, we affirm the appellate court's judgment and remand to the circuit court for further proceedings consistent with this opinion.

¶ 23 Appellate court judgment affirmed.

¶ 24 Circuit court judgment reversed.

¶ 25 Cause remanded.

¶ 26 CHIEF JUSTICE ANNE M. BURKE, specially concurring:

¶ 27 Although I agree with the result reached by the majority in affirming the judgment of the appellate court, I disagree with portions of the majority's reasoning. I therefore specially concur.

¶ 28 At issue in this case is the proper interpretation of section 5-120 of the Juvenile Court Act of 1987 (705 ILCS 405/5-120 (West 2020)). This provision states:

"Exclusive jurisdiction. Proceedings may be instituted under the provisions of this Article concerning any minor who prior to his or her 18th birthday has violated or attempted to violate, *regardless of where the act occurred, any federal, State, county or municipal law or ordinance*. Except as provided in Sections 5-125, 5-130, 5-805, and 5-810 of this Article, no minor who was

- 7 -

under 18 years of age at the time of the alleged offense may be prosecuted under the criminal laws of this State." (Emphasis added.) *Id.*

¶ 29   The appellate court interpreted the language emphasized above to mean that proceedings may be instituted in juvenile court in Illinois for a violation, or attempted violation, of any Illinois criminal law or any criminal law of the other 49 states. To hold that section 5-120 refers only to Illinois criminal law, the appellate court explained, "would be contrary to the statute's plain language and would require this court to disregard the statute's reference to *any* violations of the law, wherever they may occur, including those laws of other states, counties, municipalities, or federal law." (Emphasis in original.) 2021 IL App (5th) 210029, ¶ 13.

¶ 30   The appellate court thus concluded that section 5-120 incorporates by reference the criminal laws of both Illinois and all 49 other states. See, *e.g.*, *People v. Lewis*, 5 Ill. 2d 117, 122 (1955) (when a statute incorporates the law of another jurisdiction it is " ' "the same as though the statute or the provisions adopted had been incorporated bodily into the adopting statute" ' " (quoting *Evans v. Illinois Surety Co.*, 298 Ill. 101, 106 (1921), quoting *People ex rel. Cant v. Crossley*, 261 Ill. 78, 85 (1913))); *In re Jose C.*, 198 P.3d 1087, 1095 (Cal. 2009) (explaining that the incorporation of federal criminal law into the state delinquency act created an independent state action). In this way, the criminal laws of the other states may serve as the basis for a juvenile adjudication in an Illinois circuit court, just as the criminal laws of Illinois do.

¶ 31   Affirming the appellate court, the majority similarly concludes that section 5-120 incorporates by reference, and without qualification, the penal codes of the other 49 states. The majority holds that "the legislature's use of the word 'any' in this regard demonstrates its intent to authorize the State to initiate delinquency proceedings for unlawful conduct by a minor, including for a violation of another state's laws." *Supra* ¶ 13. I disagree.

¶ 32   The majority's reading of section 5-120 is unpersuasive because it fails to account for the fact that the criminal laws of Illinois will often conflict with the laws of our sister states, particularly in controversial areas such as gun possession, abortion, marijuana use, or gambling. To illustrate the point, consider a scenario involving abortion. Assume that a 17-year-old Illinois resident travels to another

state that has restrictive abortion laws. While there, the juvenile helps another person receive an abortion and, in doing so, violates that state's laws. Assume further that the Illinois legislature has affirmatively declared that assisting a person with receiving an abortion is not criminal conduct under Illinois law. Under the majority's reasoning, section 5-120 would nevertheless authorize delinquency proceedings against the juvenile. In other words, the majority has concluded that, in section 5-120, our legislature has authorized delinquency proceedings even for conduct that the legislature has declared elsewhere to be entirely legal.

¶ 33    Moreover, the conduct need not occur in another state. As the majority stresses, section 5-120 excludes "any geographic restriction on the conduct of a minor that may result in a delinquency proceeding by including language authorizing such a proceeding for conduct 'regardless of where the act occurred.' " *Supra* ¶ 13 (quoting 705 ILCS 405/5-120 (West 2020)). Thus, under the majority's interpretation of section 5-120, a juvenile may be subject to delinquency proceedings for engaging in conduct that has been declared unlawful by another state, even if our own legislature has declared that the conduct is not criminal and even if that conduct occurs entirely within Illinois. This cannot be correct. The legislature cannot have intended to relinquish the sovereignty of Illinois in this way.

¶ 34    The majority maintains, however, that it is simply adhering to the plain language of the statute. The majority rejects respondent's argument that, because the word "State" is capitalized in section 5-120, the legislature intended the word to mean "Illinois" and the statute therefore references only violations of Illinois law. According to the majority, there is no principle of grammar, style, or bill drafting that supports this argument. *Supra* ¶ 15. Here, too, I disagree.

¶ 35    This court's own style manual adopts the usage principle urged by respondent, instructing that the word "State" should be capitalized when used in lieu of the word "Illinois." Style Manual for the Supreme and Appellate Courts of Illinois 37 (5th ed. 2017) ("Capitalization"). Indeed, the majority itself uses the very principle which it says does not exist. Announcing its holding, the majority states that the legislature's use of the word "any" in section 2-150 "demonstrates its intent to authorize the State [(here capitalized to mean 'Illinois')] to initiate delinquency proceedings for unlawful conduct by a minor, including for a violation of another state's [(here in lower case)] laws." *Supra* ¶ 13.

¶ 36	The word "State" in section 2-150 is clearly being used in lieu of the word "Illinois." Thus, the rule set forth in section 2-150 is that delinquency proceedings may be initiated in Illinois for a violation or attempted violation of any Illinois law but not the laws of all other 49 states.[1] The majority's contrary reading of the statute is at odds with the ordinary usage of the capitalized word "State" and leads to results that simply cannot have been contemplated by the legislature.

¶ 37	This is not, however, the end of the analysis. Section 2-150 states that delinquency proceedings may be initiated for a violation of Illinois law, "regardless of where the act occurred." So, by its plain terms, section 2-150 authorizes the State to pursue delinquency proceedings for a violation of Illinois law, even if the underlying conduct occurs in another state. This is what happened here. In count I of its delinquency petition, the State alleged that respondent committed aggravated vehicular hijacking, in violation of Illinois law (720 ILCS 5/18-4(a)(5) (West 2020)), while in the state of Missouri.[2]

¶ 38	Respondent maintains, however, that Illinois lacks the power, or legislative jurisdiction, to authorize delinquency proceedings for conduct that occurs entirely within another state. In support, respondent points to section 1-5(a)(1) of the Criminal Code of 2012 (*id.* § 1-5(a)(1)). This provision states that a person generally will not be "subject to [criminal] prosecution in this State for an offense" that was not "committed either wholly or partly within the State." *Id.* However, as the majority correctly notes, section 1-5(a)(1) defines the reach of this State's criminal laws, not its delinquency proceedings. The Juvenile Court Act contains no geographic restriction for delinquency proceedings but, instead, expressly permits a juvenile to be adjudicated delinquent for violating Illinois law "regardless of where the act occurred." 705 ILCS 405/5-120 (West 2020).

---

[1]The problem of conflicting laws does not arise with respect to federal laws. If a federal law conflicts with an Illinois law, the federal law must be given effect under the supremacy clause of the United States Constitution (U.S. Const., art. VI).

[2]In its petition, the State also referenced the relevant Missouri statute that would address respondent's conduct. However, as the State explained in the circuit court, this cross-referencing was done only to "assure that this minor is accused of a violation of law that would be a crime where it physically occurred."

¶ 39    Respondent also contends that conducting delinquency proceedings in Illinois for conduct that took place in Missouri raises "due process concerns," arguing in essence that it is unfair and illogical to apply section 2-150 here. I disagree.

¶ 40    The Juvenile Court Act is a codification and exercise of the powers of the State as *parens patriae* (*People ex rel. Houghland v. Leonard*, 415 Ill. 135, 138 (1953)), to which respondent, as a juvenile resident of Illinois, is subject. It is well settled that the State, acting as *parens patriae*, is "entitled to adjust its legal system to account for children's vulnerability" and may exercise broad authority over their activities to afford them protection. *Bellotti v. Baird*, 443 U.S. 622, 634-35 (1979). Given this legal framework, it would be wholly inconsistent to say that the State has an obligation to protect and rehabilitate respondent but that it may not initiate delinquency proceedings in Illinois. And this is particularly true here, where Missouri has no power as *parens patriae* and has not requested respondent's return under the Interstate Compact on Juveniles Act (45 ILCS 10/0.01 *et seq.* (West 2020)) and where there has been no assertion that the sovereignty of Missouri would be negatively affected in any way by delinquency proceedings held in Illinois. See *e.g.*, *In re D.B.S.*, 349 A.2d 105, 107-08 (N.J. Super. Ct. App. Div. 1975) (New Jersey had "an obligation to protect and rehabilitate" a juvenile who lived on, and committed a crime on, a federal military base so long as there was no interference with jurisdiction asserted by the federal government).

¶ 41    Further, as the State points out, in many respects respondent benefits from having the delinquency proceedings initiated in Illinois rather than Missouri. While both the Illinois and Missouri juvenile justice systems emphasize rehabilitation through family and community-based interventions, as the place of his residence, Illinois is better positioned than Missouri to ensure that the respondent's family and community are involved in the rehabilitative process and that there is no more disruption in respondent's life than is necessary to foster rehabilitation and protect the public.

¶ 42    Finally, respondent contends that practical difficulties in conducting a defense, such as interviewing witnesses or obtaining evidence, may arise when delinquency proceedings are held in Illinois for conduct that occurred in another state. However, to the extent that respondent is asserting that practical concerns have risen to the level of a due process violation in this case, the allegations are premature, as there

is no evidence of record that any practical difficulties do, in fact, exist. See, *e.g.*, *Vasquez Gonzalez v. Union Health Service, Inc.*, 2018 IL 123025, ¶ 24 (findings of fact are required to determine whether a statute is unconstitutional as applied). Should serious impediments to conducting a defense actually arise on remand, respondent is free to raise those concerns in the circuit court, as would any juvenile subject to delinquency proceedings for conduct that occurred in another state.

¶ 43 For these reasons, I specially concur.

¶ 44 JUSTICE HOLDER WHITE took no part in the consideration or decision of this case.