Order filed August 30, 2024.    2024 IL App (5th) 210407
Motion to publish granted
September 24, 2024.          NO. 5-21-0407

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Madison County. |
| | ) | |
| v. | ) | No. 18-CF-2336 |
| | ) | |
| ARTHUR E. SMALLWOOD, | ) | Honorable |
| | ) | Kyle A. Napp, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

PRESIDING JUSTICE VAUGHAN delivered the judgment of the court, with opinion. Justices Cates and McHaney concurred in the judgment and opinion.

**OPINION**

¶ 1    Defendant, Arthur E. Smallwood, appeals the trial court's dismissal of his petition for relief from judgment pursuant to section 2-1401 of the Code of Civil Procedure (735 ILCS 5/2-1401 (West 2020)). On appeal, he argues that the trial court's sentence of mandatory life is not authorized under section 5-4.5-95(a)  of the Unified Code of Corrections (Code) (730 ILCS 5/5-4.5-95(a) (West 2018)) and is unconstitutional, as applied to him, pursuant to the proportionate penalties clause of the Illinois Constitution and the eighth amendment of the United States Constitution. For the following reasons, we affirm.

¶ 2                          I. BACKGROUND

¶ 3    On August 9, 2018, defendant was charged, by indictment, with attempted first degree murder in violation of sections 8-4(a) and 9-1(a)(1) of the Criminal Code of 2012 (720 ILCS 5/8-

1

4(a), 9-1(a)(1) (West 2018)) (count I) and aggravated battery in violation of section 12-3.05(a)(1) (*id.* § 12-3.05(a)(1)) (count II),[1] for stabbing Jan-Eric Andersson over 12 times in the back, shoulder, and neck. On September 13, 2018, defendant's counsel filed a motion to determine defendant's fitness to stand trial, alleging a *bona fide* doubt as to defendant's fitness. On September 17, 2018, the court issued an order granting the motion and ordering a fitness evaluation. Dr. Cuneo conducted the evaluation on October 3, 2018. In his report, filed on October 12, 2018, he diagnosed defendant with malingering, unspecified depressive disorder, cocaine use disorder, alcohol use disorder, cannabis use disorder, and unspecified personality disorder. Dr. Cuneo opined defendant was fit to stand trial. A hearing to determine defendant's fitness was held on October 31, 2018. Following consideration of Dr. Cuneo's report and the trial court's inquiry and discussion with defendant, the trial court issued an order finding defendant was fit to stand trial.

¶ 4    On April 29, 2019, the State filed a verified notice of its intention to seek a mandatory natural life sentence based on defendant's prior two Class X felony convictions, pursuant to the habitual criminal sentencing statute (730 ILCS 5/5-4.5-95(a) (West 2018)). At trial, evidence was submitted revealing that on August 8, 2018, defendant requested a cab at Bubby & Sissy's bar in Alton, Illinois. Mr. Andersson was dispatched from Alton's Best Cabs (ABC) to pick up defendant. After reaching defendant's requested destination, defendant put Mr. Andersson in a chokehold and stabbed him at least 18 times. In response, Mr. Andersson intermittently pressed on the gas and brake pedals and swerved to try to shake defendant off. After defendant yelled to let him out of the cab, Mr. Andersson slowed down, and defendant exited the car before the vehicle was stopped.

¶ 5    On July 18, 2019, the jury convicted defendant of attempted first degree murder. Defendant had two prior Class X felony convictions, and pursuant to the habitual criminal statute (*id.*), he

---

[1]The State dismissed count II prior to the jury trial.

was sentenced to mandatory natural life imprisonment on September 23, 2019. The presentence investigation report stated that defendant conveyed he had received mental health treatment in the past and that he was diagnosed with schizoaffective disorder when he was at Chestnut Health Systems. Attached to the report were medical records from Chestnut Health Systems for an October 20, 2016, date of service and records from Gateway Regional Medical Center for dates of services on January 5, 2018, and January 28, 2016. Defendant provided a statement in allocution at the sentencing hearing, in which he claimed ineffective assistance of counsel. The trial court conducted a *Krankel* hearing and ultimately found defendant's claims did not rise to the level requiring the court to take further action. On direct appeal, this court affirmed defendant's conviction but reversed the trial court's *Krankel* determination and remanded the case for a new hearing on defendant's posttrial ineffective assistance of counsel claim with new counsel. *People v. Smallwood*, 2022 IL App (5th) 190416-U, ¶ 90.

¶ 6     On January 10, 2020, defendant filed a hand-written petition for relief from judgment pursuant to section 2-1401 of the Code of Civil Procedure (735 ILCS 5/2-1401 (West 2020)) alleging that, as applied to him, his mandatory life sentence pursuant to section 5-4.5-95  of the Code (730 ILCS 5/5-4.5-95 (West 2020)) violated the proportionate penalties clause of the Illinois Constitution and the eighth amendment of the United States Constitution. Defendant argued that he was intellectually disabled now and even more so when his two prior Class X felonies occurred when he was 19 years old. In support of his position, defendant cited *People v. Coty*, 2018 IL App (1st) 162383, ¶¶ 61-75, and argued it held that intellectually disabled persons should be treated like juveniles because their intellectual disability diminished their culpability. He further argued that on October 20, 2016, he was diagnosed with bipolar schizoaffective disorder. Citing WebMD, defendant stated bipolar schizoaffective disorder included the following symptoms: delusions,

3

hallucinations, depression, periods of manic mood, impaired communications, problems with managing personal care, self-destructive dangerous behavior, agitations, a lack of emotion in facial expressions and speech, and impaired occupational, academic, and social functioning. Defendant argued that his mental condition should provide him with similar protections afforded to minors under *Miller v. Alabama*, 567 U.S. 460 (2012). He also argued his prior Class X felonies should not have been used to enhance his current sentence to natural life because he was not a fully mature adult when the Class X felonies were committed. In support, defendant cited *People v. House*, 2019 IL App (1st) 110580-B, and argued that research in neurobiology and developmental psychology showed that young adults' brains do not finish developing until their mid-20s, making young adults more like juveniles than mature adults. Finally, defendant argued that the State did not provide notice of its intent to seek natural life imprisonment.

¶ 7    The petition was supported by defendant's affidavit stating that his first Class X felony occurred when he was 19, an age that the law now considers a minor. It further stated his judgment was not fully developed at age 19, he did not fully understand or appreciate the consequences of his conduct, and the convictions from when he was 19 years old should not be used against him based on what is now known about juvenile and young-adult brains. The affidavit further provided that defendant was molested when he was 5 years old, beaten by his mother from age 7 through 12, saw his 12-year-old aunt having sex with his mother's boyfriend, saw his mother beaten by several men from the age of 6 through 13, experimented with drugs and alcohol at age 13, impregnated his girlfriend at age 15, and was abusive towards his girlfriend. The affidavit further asserted that when defendant was 18 years old, he witnessed his brother get shot and killed, and when defendant was 19 years old, he committed armed robbery, took the rap for his codefendant, and went to prison for 9½ years. Finally, defendant's affidavit stated that in 1997, he was convicted

4

of attempted murder of a friend whom he hit on the head with a claw hammer after waking up to the friend trying to unzip his pants. The affidavit contended defendant hit his friend because of his prior molestation.

¶ 8      On February 3, 2021, the State filed a motion to dismiss defendant's petition for relief from judgment, arguing that *Miller* did not apply in the instant case because defendant was over the age of 18 at the time of Class X convictions and was 54 years old when he committed the current crime. The State further argued—citing *People v. Mays*, 176 Ill. App. 3d 1027 (1988)—that section 5-4.5-95 was repeatedly found constitutional. Finally, the State argued that defendant was provided notice of the potential mandatory natural life sentence when the State filed its notice of intention to seek a mandatory natural life sentence on April 29, 2019.

¶ 9      On March 2, 2021, defendant filed a response to the State's motion to dismiss. The response claimed that the current neuroscience was unavailable when section 5-4.5-95 was challenged in *Mays*. The response further argued that considering the new science, the habitual criminal statute was ripe for challenge as unconstitutional as applied to defendant because one or more of the triggering offenses occurred prior to defendant turning 21 years old. In support, defendant cited H.B. 3653, passed on January 13, 2021, which amended the statute on habitual criminals to preclude consideration of the initial Class X offense unless the defendant was 21 years of age or older when the offense was committed. The response further indicated that the State acknowledged defendant's life of abuse and trauma as well as his 2016 diagnosis of schizoaffective disorder prior to the commission of the current crime. Finally, the response requested appointment of counsel.

¶ 10     At a video hearing held on April 15, 2021, counsel was appointed for defendant and was ordered to respond to the State's motion to dismiss within 90 days. On July 19, 2021, counsel entered her appearance for defendant. On September 22, 2021, the court set the State's motion to

5

dismiss for hearing. Defendant's counsel filed her Illinois Supreme Court Rule 651(c) (eff. July 1, 2017) certificate on December 15, 2021, and confirmed to the court at the hearing held the same day that she was adopting the pleadings filed by defendant and had no additions or corrections for those pleadings.

¶ 11 The State argued that the habitual offender statute was previously found constitutional, and *Miller* did not apply to defendant's case because he was over 18 when all the crimes were committed. While acknowledging defendant alleged a mental illness, the State reminded the court that defendant was found fit for trial after a fitness exam was requested by his counsel in this matter and argued that having mental illness or trauma as a child did not absolve defendant of the sentence entered on his conviction. The State further argued that notice of the intent to seek a mandatory life sentence was filed in the case in addition to notifying defendant of that intent many times on the record.

¶ 12 Defendant's counsel cited *Coty*, 2018 IL App (1st) 162383, arguing the decision extended *Miller* to those with mental illnesses and defendant's mental illnesses were included in his petition. Counsel further argued that defendant's ability to stand trial was a different issue than whether defendant should be sentenced as an adult without any mental disabilities.

¶ 13 Following argument, the trial court noted that defendant's petition requested relief from judgment pursuant to section 2-1401, stating that the purpose of those petitions was to bring attention to facts unknown by the court at the time of the hearing and, if known, would have prevented the entry of judgment. The court cited examples of the use of section 2-1401, including postpartum depression or issues involving domestic abuse, and noted that neither were applicable here. The court stated that even assuming the petitioner's allegations were true, and that defendant had a terrible childhood, those childhood circumstances did not qualify for a petition for relief

6

from judgment. The court noted the State provided notice of its intent to seek lifetime imprisonment and it was verified that defendant's prior convictions occurred when he was over the age of 18. The court found there was nothing in the petition that would change defendant's sentence at the time of sentencing, if known by the court at that time. Thereafter, the court dismissed defendant's petition for relief and advised defendant of his appeal rights.

¶ 14                                    II. ANALYSIS

¶ 15    Defendant timely appealed, arguing that his life sentence was unconstitutional as applied to him. Subsequently, we allowed defendant leave to file a supplemental brief. The supplemental brief argued that his sentence was unconstitutional in light of the 2021 amendments to section 5-4.5-95(a)(4)(E) and that based on the interpretation of that statute in *People v. Durant*, 2024 IL App (1st) 211190-B, and *People v. Stewart*, 2022 IL 126116, defendant's 1983 conviction—which he committed when he was 19 years old—could not be considered a predicate offense under the habitual criminal provision. Because the petition was dismissed on the pleadings, we review the dismissal of his section 2-1401 petition *de novo*. *People v. Vincent*, 226 Ill. 2d 1, 18 (2007).

¶ 16    We first address the trial court's reason for dismissing defendant's petition. Section 2-1401 provides relief from final orders and judgments "regardless of the nature of the order or judgment from which relief is sought or of the proceedings in which it was entered." 735 ILCS 5/2-1401(a) (West 2020). Under section 2-1401, a defendant must show "proof, by a preponderance of evidence, of a defense or claim that would have precluded entry of the judgment in the original action and diligence in both discovering the defense or claim and presenting the petition." *Vincent*, 226 Ill. 2d at 7-8. A proper section 2-1401 petition includes any "[v]oidness challenges stemming from the unconstitutionality of a criminal statute under the proportionate penalties clause." *People v. Ligon*, 2016 IL 118023, ¶ 9. Therefore, we disagree with the trial court's finding that defendant's

7

section 2-1401 petition was an improper vehicle to bring his proportionate penalties claim. Our review, however, is of the court's judgment, regardless of whether its reasoning was correct. *People v. Burchell*, 2018 IL App (5th) 170079, ¶ 9. We may affirm for any basis in the record. *Id.*

¶ 17 Before we address defendant's proportionate penalties claim, we consider the issue raised in his supplemental brief. It is not entirely clear whether defendant's supplemental brief asserts that he is entitled to resentencing because he did not qualify for a natural life sentence under section 5-4.5-95(a) or because *Durant* and *Stewart*'s interpretation of the statute supports defendant's argument that a mandatory life imprisonment is unconstitutional as applied to him. We nevertheless find both arguments unsuccessful.

¶ 18 *Stewart* and *Durant* were not published until after defendant filed this appeal. However, citing *Durant*, 2024 IL App (1st) 211190-B, ¶¶ 39-40, defendant argues the holdings of *Stewart* and *Durant* apply retroactively to cases on collateral review and that, pursuant to those cases, his Class X felony committed when he was 19 years old cannot be a predicate offense under the habitual criminal statute. We disagree.

¶ 19 *Stewart* addressed a different subsection of the statute at issue in this case. It interpreted subsection (b) of section 5-4.5-95, which states:

" 'When a defendant, over the age of 21 years, is convicted of a Class 1 or Class 2 felony, after having twice been convicted in any state or federal court of an offense that contains the same elements as an offense now (the date the Class 1 or Class 2 felony was committed) classified in Illinois as a Class 2 or greater Class felony and those charges are separately brought and tried and arise out of different series of acts, that defendant shall be sentenced as a Class X offender. This subsection does not apply unless:

8

> (1) the first felony was committed after February 1, 1978 (the effective date of Public Act 80-1099);
>
> (2) the second felony was committed after conviction on the first; and
>
> (3) the third felony was committed after conviction on the second.' "

*Stewart*, 2022 IL 126116, ¶ 5 (quoting 730 ILCS 5/5-4.5-95(b) (West 2016)).

¶ 20 Public Act 101-652 (eff. July 1, 2021) amended section 5-4.5-95(b)(4) of the Code to provide that the first qualifying offense for Class X sentencing must have been " 'committed when the person was 21 years of age or older.' " *Id.* ¶ 19 (quoting Pub. Act 101-652 (eff. July 1, 2021) (amending 730 ILCS 5/5-4.5-95(b)(4))). *Stewart* found that, prior to 2021, section 5-4.5-95(b) was ambiguous because it was silent as to whether the legislature intended a prior felony conviction to be a qualifying offense for Class X sentencing if the same offense would have resulted in a juvenile adjudication had it been committed on the date of the present offense and such silence resulted in an appellate court split. *Id.* ¶¶ 16-18. Due to its finding of ambiguity, the *Stewart* court found the amendment to section 5-4.5-95(b) under Public Act 101-652 did not substantively change the law but rather clarified that the legislature did not intend for convictions of juveniles in adult court to be considered qualifying offenses for Class X sentencing. *Id.* ¶¶ 18, 22. As such, it determined that the defendant's Class X sentence imposed in 2017 was unauthorized under section 5-4.5-95(b) because his 2013 conviction for an offense committed when he was 17 years old was not a qualifying offense for Class X sentencing under the previous version of section 5-4.5-95(b). *Id.* ¶¶ 22-23.

¶ 21 The statute at issue in this case is section 5-4.5-95(a) of the Code that was in effect, in 2019, when defendant was sentenced. That statute states, in pertinent part:

"(1) Every person who has been twice convicted in any state or federal court of an offense that contains the same elements as an offense now (the date of the offense committed after the 2 prior convictions) classified in Illinois as a Class X felony, criminal sexual assault, aggravated kidnapping, or first degree murder, and who is thereafter convicted of a Class X felony, criminal sexual assault, or first degree murder, committed after the 2 prior convictions, shall be adjudged an habitual criminal.

(2) The 2 prior convictions need not have been for the same offense.

(3) Any convictions that result from or are connected with the same transaction, or result from offenses committed at the same time, shall be counted for the purposes of this Section as one conviction.

(4) This Section does not apply unless each of the following requirements are satisfied:

    (A) The third offense was committed after July 3, 1980.

    (B) The third offense was committed within 20 years of the date that judgment was entered on the first conviction; provided, however, that time spent in custody shall not be counted.

    (C) The third offense was committed after conviction on the second offense.

    (D) The second offense was committed after conviction on the first offense.

10

(5) Anyone who, having attained the age of 18 at the time of the third offense, is adjudged an habitual criminal shall be sentenced to a term of natural life imprisonment." 730 ILCS 5/5-4.5-95(a) (West 2018).

¶ 22     The same public act discussed in *Stewart* also amended section 5-4.5-95(a) to provide that the first qualifying offense, for imposing a natural life sentence on a defendant adjudged a habitual criminal, must have been "committed when the person was 21 years of age or older." Pub. Act 101-652 (eff. July 1, 2021) (amending 730 ILCS 5/5-4.5-95(a)(4)(E), (5)). In *Durant*, 2024 IL App (1st) 211190-B, ¶ 30, the First District found that the amendments of Public Act 101-652 clarified—rather than changed—section 5-4.5-95(a) of the Code. It reasoned that "as a matter of logic, *Stewart*'s discussion of the legislative intent behind Public Act 101-652's amendment to the Class X provision in subsection (b) cannot be viewed in isolation from the legislature's simultaneous and substantially identical amendment to the habitual criminal provision." *Id.* ¶ 31. *Durant* found,

> "Given these circumstances, it is hard to conceive how the legislature could have intended one of the amendments to be a mere clarification of existing law (that applied retroactively), while having a very different intent for the other identically worded amendment. Indeed, it would be incongruous and defy common sense to find the legislature did not act with similar intent when it added identical provisions at the very same time in the same public act." *Id.* ¶ 32.

¶ 23     In doing so, *Durant* acknowledged that the habitual criminal provision of section 5-4.5-95(a) differed from the Class X sentencing of section 5-4.5-95(b) in that "the version of the habitual criminal provision immediately preceding Public Act 101-652 (in effect from 2016 to 2021), indicated that persons as young as 18 could be adjudged a habitual criminal." *Id.* ¶ 35. It

11

noted, however, that "[b]efore 2016, the habitual criminal provision did not specify any minimum age." *Id.* It therefore rejected that "the 'age of 18' language in the immediately preceding version of the habitual criminal provision means that the new language added by Public Act 101-652 must be regarded as a substantive change in law." *Id.* ¶¶ 36-37. In light of the legislative history of both subsections, *Durant* found

> "the legislature originally intended that convictions for crimes under age 21 should not count toward *either* habitual criminal status under subsection (a) or Class X sentencing under subsection (b). Then, from 2016 until 2021, the legislature made subsection (a) more punitive by grafting the 'age of 18' language into the habitual criminal provision. In 2021, Public Act 101-652 restored subsections (a) and (b) to their original intended meaning, explicitly clarifying that only offenses committed after the age of 21 should count toward eligibility for habitual criminal status or Class X sentencing." (Emphasis in original.) *Id.* ¶ 37.

¶ 24    Justice Lavin dissented in *Durant*. He found the previous version of the habitual criminal statute under which the defendant was sentenced was not ambiguous and clearly applied to defendant. *Id.* ¶ 56 (Lavin, J., dissenting). Justice Lavin further found that even if the pre-2016 version of the habitual criminal statute was ambiguous, the 2021 amendment did not apply retroactively because the 2021 amendment substantively changed the 2016 version that only required defendant to be 18 years old at the time of the third offense. *Id.* ¶¶ 57-58 (Lavin, J., dissenting). He concluded, "Given the crucial differences between the legislative history behind subsection 5-4.5-95(a) and subsection (b), *Stewart*'s reasoning regarding subsection (b) cannot logically be applied to the changes made to subsection (a) by Public Act 101-652 (eff. July 1, 2021) (amending 730 ILCS 5/5-4.5-95(a), (b))." *Id.* ¶ 59 (Lavin, J., dissenting).

12

¶ 25    While the instant case and *Durant* differ in that *Durant* concerned the pre-2016 habitual criminal sentencing statute that contained no age requirement and this case concerns the post-2016 version that includes the requirement that a defendant be 18 years of age by the third qualifying offense, we agree with Justice Lavin's dissent. *Stewart* determined the pre-2021 version of section 5-4.5-95(b) was ambiguous, and the legislature clarified that ambiguity with the 2021 amendments such that the pre-2021 version was always intended to exclude offenses committed when a defendant was 17 years old. *Stewart*, 2022 IL 126116, ¶ 22. As such, *Stewart*'s conclusion applies here only if the amendments under Public Act 101-652 also clarified an ambiguity in section 5-4.5-95(a).

¶ 26    Prior to 2016, section 5-4.5-95(a) did not include any age requirement for a defendant to be sentenced to natural life imprisonment under that statute. 730 ILCS 5/5-4.5-95(a) (West 2014). However, in 2016, Public Act 99-69 (eff. Jan. 1, 2016) amended section 5-4.5-95(a) to require that a defendant be 18 years of age by the third qualifying offense and be adjudged a habitual criminal in order to be sentenced to natural life. Defendant here was sentenced under the statute containing the 2016 amendments.

¶ 27    The legislature's explicit 18 years of age at the time of third offense requirement, effective in 2016, distinguishes section 5-4.5-95(a) from section 5-4.5-95(b) and makes *Stewart* inapplicable. There is no reasonable way to read the 2016 amendments other than to conclude that the defendant must be 18 years of age or older by the third qualifying offense. Where a defendant need only be 18 years of age by the third offense, it logically follows that a defendant could be younger than 18 years of age for the first and second qualifying offenses and still be sentenced to natural life imprisonment under the habitual criminal sentencing statute. As such, there is no ambiguity under the relevant version of section 5-4.5-95(a) as to whether an offense committed

13

when a defendant was under the age of 18 constitutes a qualifying first or second offense under the habitual criminal sentencing statute. Because there is no ambiguity, we do not look to subsequent amendments—as *Stewart*—or other extrinsic aids of statutory construction. See *People v. Marshall*, 242 Ill. 2d 285, 292 (2011) (limiting the ability to look beyond the statutory language to ascertain legislative intent only if the statute is ambiguous). Rather, we adhere to the plain language of the statute. See *In re Kelan W.*, 2022 IL 128031, ¶ 11 (where the statutory language is clear and unambiguous, we must apply the statute as written without resorting to extrinsic aids of statutory construction).

¶ 28    Oddly, the *Durant* majority does not find that the 2016 version of section 5-4.5-95(a) is ambiguous. Rather it finds the *Stewart* analysis applicable to 5-4.5-95(a) because "it would be incongruous and defy common sense to find the legislature did not act with similar intent when it added identical provisions at the very same time in the same public act." *Durant*, 2024 IL App (1st) 211190-B, ¶ 32. Such reasoning, however, would render the legislature's 2016 amendment under Public Act 99-69 meaningless.

¶ 29    Assuming *arguendo* that the pre-2016 version of section 5-4.5-95(a)—which was at issue in *Durant*—was ambiguous, the logic of *Stewart* still supports that Public Act 101-652 substantively changed section 5-4.5-95(a) because we would look to the legislature's subsequent amendments to resolve the ambiguity of the statute. The subsequent amendment to section 5-4.5-95(a) occurred in 2016, not 2021. Thus, under the logic of *Stewart*, Public Act 99-69 clarified that section 5-4.5-95(a) always allowed for natural life imprisonment for a defendant who committed qualifying offenses under the age of 18 as long as the defendant was 18 years of age by the third qualifying offense. While it may appear to be incongruous to find the same language in the same act as clarification for one subsection and not another subsection, we cannot ignore the clear,

14

unambiguous plain language of section 5-4.5-95(a) that allowed for natural life sentencing if a habitual criminal was 18 years of age at the time of the third qualifying offense before Public Act 101-652 was enacted.

¶ 30   Accordingly, even if Public Act 101-652 was meant to restore the original pre-2016 intent of the legislature—as *Durant* believes (*Durant*, 2024 IL App (1st) 211190-B, ¶ 30)—Public Act 101-652 substantively changed the age requirements of section 5-4.5-95(a), rather than clarified it. The amendments in Public Act 101-652 and *Stewart* therefore do not control the interpretation of section 5-4.5-95(a) prior to 2021. Because defendant here was sentenced in 2019 and 18 years of age when he committed the third qualifying offense under the habitual criminal sentencing statute, his sentence was authorized by section 5-4.5-95(a).

¶ 31   *Stewart* and *Durant* also provide no support for defendant's constitutional argument on appeal. Defendant contends his natural life imprisonment violates the proportionate penalties clause and eighth amendment as applied to him based on his mental illness. While *Stewart* and *Durant* interpret the habitual criminal sentencing statute, neither case discussed whether an alternative interpretation of that statute would be unconstitutional. Accordingly, *Stewart* and *Durant* do not impact our analysis of defendant's as-applied constitutional challenge.

¶ 32   We next address defendant's as-applied constitutional argument under the proportionate penalties clause. "It is within the legislative province to define offenses and determine the penalties required to protect the interests of our society." *People v. Taylor*, 102 Ill. 2d 201, 206 (1984). The proportionate penalties clause of the Illinois Constitution states, "All penalties shall be determined both according to the seriousness of the offense and with the objective of restoring the offender to useful citizenship." Ill. Const. 1970, art. I, § 11. "All statutes carry a strong presumption of constitutionality." *People v. Sharpe*, 216 Ill. 2d 481, 487 (2005). "[T]he party challenging the

15

statute must clearly establish that it violates the constitution." *Id.* (citing *People v. Malchow*, 193 Ill. 2d 413, 418 (2000)). A penalty violates the proportionate penalties clause if it is so severe that it is cruel, degrading, or so wholly disproportionate to the offense committed as to shock the moral sense of the community. *Id.* at 521.

¶ 33    Statutes that address recidivism are constitutional exercises of the " 'State's police power to protect our society from habitually violent and heinous criminals.' " *People v. Cummings*, 351 Ill. App. 3d 343, 348 (2004) (quoting *People v. McNeil*, 125 Ill. App. 3d 876, 884 (1984)). Implicit in these statutes " 'is a legislative determination that a three-time offender should be removed from society since he is impervious to the rehabilitative efforts of the State.' " *Id.* (quoting *People v. Hartfield*, 137 Ill. App. 3d 679, 692 (1985)). The statutes designed to eradicate recidivism have repeatedly been upheld on claims of unconstitutionality. See *People v. Tobias*, 125 Ill. App. 3d 234, 240-42 (1984); *People v. Cardenas*, 209 Ill. App. 3d 217, 232 (1991); *People v. Gaston*, 259 Ill. App. 3d 869, 877 (1994). Defendant here argues that the mandatory nature of the recidivism sentencing statute at issue is unconstitutional as applied to him based on his claim that his diagnosis of schizoaffective disorder rendered him eligible for *Miller* protections.

¶ 34    In *Miller*, 567 U.S. at 489, the United States Supreme Court held that the eighth amendment prohibited mandatory life imprisonment sentences for juveniles without parole. *Miller* did not prohibit life sentences but required that sentencing courts have discretion in sentencing juveniles after considering the juvenile's youth and the attendant characteristics of youth. *Jones v. Mississippi*, 593 U.S. 98, 108-09 (2021). *Miller* was "based in part upon the lesser culpability of youth" but was principally founded upon transient characteristics that could be reformed as a person aged and neurological development occurred. *People v. Coty*, 2020 IL 123972, ¶ 39.

16

¶ 35    *Miller* applies only where the defendant was a juvenile at the time of the crime. However, the Illinois Supreme Court has indicated that defendants are not foreclosed from asserting "as-applied *Miller*" claims. See *People v. Clark*, 2023 IL 127273, ¶ 87 ("this court has not foreclosed 'emerging adult' defendants between 18 and 19 years old from raising as-applied proportionate penalties clause challenges to life sentences based on the evolving science on juvenile maturity and brain development" (citing *People v. Thompson*, 2015 IL 118151, ¶¶ 43-44, and *People v. Harris*, 2018 IL 121932, ¶¶ 1, 48)). An as-applied claim requires a party to establish the statute is unconstitutional as applied to the party's specific facts or circumstances. *People v. House*, 2021 IL 125124, ¶ 27.

¶ 36    Many cases involving as-applied *Miller* claims address whether a young adult offender is entitled to *Miller* protections because young adults' brains are more like a juvenile's than an adult's. *Thompson*, 2015 IL 118151, ¶¶ 1, 44; *Harris*, 2018 IL 121932, ¶¶ 1, 48; *House*, 2021 IL 125124, ¶¶ 29, 32. However, in *Coty*, 2020 IL 123972, the Illinois Supreme Court addressed an as-applied *Miller* claim in a different context, *i.e.*, a defendant with mental disability.[2]

¶ 37    In *Coty*, the court determined that mandatory life imprisonment for repeat sexual offenders who are intellectually disabled did not violate the proportionate penalties clause. *Id.* ¶¶ 42-44. In doing so, the court looked at "culpability, future dangerousness, and rehabilitative potential." *Id.* ¶ 32. It noted that rehabilitative potential was "particularly important." *Id.*

¶ 38    Based on *Coty* and the basis for *Miller*, for a defendant to successfully argue an as-applied *Miller* claim, he must explain how his specific circumstances excuse culpability and, more importantly, how the circumstances are transient and could be remedied over time. See *id.* ¶¶ 32,

---

[2]We note in *Coty*, the Illinois Supreme Court reversed the First District decision (*Coty*, 2018 IL App (1st) 162383) that defendant relied on in the lower court. *Coty*, 2020 IL 123972, ¶¶ 1, 52-53.

39. Thus, defendant here needed to show that his mental illness of schizoaffective disorder reduced his culpability and could be reformed over time.

¶ 39 Defendant contends, unlike the intellectually disabled discussed in *Coty*, mentally ill individuals are less culpable than an unimpaired person and can change over time with proper treatment. We note that, on appeal, defendant relies upon a criminal justice article, addressing how to reduce recidivism for those with mental health issues, authored by The Council of State Governments. However, because the article was not presented below, we refuse to consider it on appeal. See *In re R.M.*, 2022 IL App (4th) 210426, ¶ 46.

¶ 40 The evidence in the record to support defendant's petition reveals that defendant self-reported his diagnosis of schizoaffective disorder in 2016. The Chestnut Health Systems medical records containing defendant's self-reported condition also revealed self-reported claims of visual and auditory hallucinations, and prior suicide attempts. However, the records indicate that defendant attributed his hallucinations to his alcohol and drug use. Notably, absent from the records is a doctor diagnosing defendant with schizoaffective disorder.[3]

¶ 41 Even assuming defendant's self-reported schizoaffective disorder was sufficient to establish he suffered from the mental illness, there is nothing in the record or his petition to conclude this illness made him less culpable. Defendant's petition provided every possible symptom of schizoaffective disorder, as listed on WebMD, but provided no evidence that defendant actually incurred any symptoms beyond those contained in his mental health records, *i.e.*, hallucinations and symptoms of depression. Defendant contends that because serious mental illness is a factor in mitigation to be considered at sentencing (see 730 ILCS 5/5-5-3.1(a)(16) (West

---

[3]We note defendant was diagnosed with other mental illnesses, but he did not rely on those diagnoses to argue *Miller* applies to him in either his petition or on appeal.

2022)), Illinois law recognizes offenders with a serious mental illness have reduced culpability. This argument is unpersuasive for two reasons. First, section 5-5-3.1(a)(16) of the Code provides that it is a mitigating factor when "a serious mental illness *** substantially affected [a defendant's] ability to understand the nature of his or her acts or to conform his or her conduct to the requirements of the law." *Id.* As explained above, defendant failed to explain how his mental illness reduced his culpability or affected his ability to conform to the law. Second, the Illinois Supreme Court previously explained that "information about a defendant's mental or psychological impairments is not inherently mitigating." (Internal quotation marks omitted.) *People v. Ballard*, 206 Ill. 2d 151, 190 (2002); *People v. Robinson*, 2021 IL App (1st) 192289, ¶ 57. "A judge or jury considering evidence of this nature at sentencing might view the information as either mitigating or aggravating, depending, of course, on whether the individual hearing the evidence finds that it evokes compassion or demonstrates possible future dangerousness." *People v. Thompson*, 222 Ill. 2d 1, 42-43 (2006). Accordingly, defendant failed to sufficiently show that schizoaffective disorder reduced his culpability.

¶ 42    More importantly, nothing in the petition explains or supports the conclusion that schizoaffective disorder, and the disorder with respect to defendant, was treatable. While the medical records included treatment recommendations for the other mental illnesses diagnosed by medical facilities, nothing indicated a success rate or how the treatment would affect defendant's alleged schizoaffective disorder or his future behavior. Further undermining defendant's petition is the fact that his medical records revealed that he was self-aware of his mental health issues but noncompliant with his treatment. Even when defendant was compliant with treatment, there was no evidence that his treatment adequately controlled his other mental illnesses.

¶ 43    We find this case comparable to *Robinson*, 2021 IL App (1st) 192289. The defendant in *Robinson* demonstrated that he suffered from bipolar disorder, PTSD, depression, antisocial personality disorder, and insomnia. *Id.* ¶ 56. However, defendant failed to show how his mental illnesses reduced his culpability as compared to a typical defendant. *Id.* He also failed to provide any basis to conclude his mental health conditions were treatable such that he had an increased possibility of rehabilitation. *Id.* ¶ 58. The court explained there was no evidence that the treatment defendant received "adequately controlled his mental illness or reduced his tendency to defy authority and engage in violent behavior." *Id.* Moreover, there was evidence that defendant was unwilling to comply with treatment. *Id.* For these reasons, *Robinson* denied defendant's claim that his mandatory life sentence was unconstitutional as applied to him. *Id.* ¶¶ 56-58, 64.

¶ 44    Like the defendant in *Robinson*, defendant here failed to sufficiently plead and prove how his mental illness rendered him less culpable of his crime or that treatment would allow him to achieve rehabilitation. His as-applied proportionate penalties argument therefore fails. Likewise, because he failed to show his sentence violated the proportionate penalties clause, his eighth amendment claim also fails. See *Coty*, 2020 IL 123972, ¶ 45 ("if a sentence passes muster under the proportionate penalties clause ***, then it would seem to comport with the contemporary standards of the eighth amendment").

¶ 45    Defendant requests this court remand for an evidentiary hearing if we find insufficient information regarding his condition. We decline to do so. Defendant and his counsel had ample opportunity to sufficiently plead his as-applied claim and attach supporting evidence. Both failed to do so and relied on the medical records attached to defendant's presentence investigation report. Such evidence was insufficient to show defendant's reduced culpability and ability to reform his transient characteristics over time. "A defendant who has an adequate opportunity to present

evidence in support of an as-applied, constitutional claim will have his claim adjudged on the record he presents." *Id.* ¶ 22. Therefore, we affirm the trial court's dismissal of defendant's petition for relief from judgment.

¶ 46                                  III. CONCLUSION

¶ 47     For the foregoing reasons, we affirm the trial court's dismissal of defendant's motion for relief from judgment.

¶ 48     Affirmed.

_____

*People v. Smallwood*, **2024 IL App (5th) 210407**
_____

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Madison County, No. 18-CF-2336, the Hon. Kyle A. Napp, Judge, presiding. |

_____

| | |
|---|---|
| **Attorneys for Appellant:** | James E. Chadd, Douglas R. Hoff, Manuela Hernandez, of State Appellate Defender's Office of Chicago, for Appellant. |

_____

| | |
|---|---|
| **Attorneys for Appellee:** | Thomas A. Haines, State's Attorney, of Edwardsville, IL, Patrick Delfino, Patrick D. Daly, Becky A. Ray of State's Attorneys Appellate Prosecutor's Office of Mt. Vernon, for the Appellee. |

_____